## THE CRAWFORD BROS. NO. 2.

### FOSS (BERG, Intervener) v. THE CRAWFORD BROS. NO. 2.

(District Court, W. D. Washington, S. D. June 27, 1914.)

#### No. 1564.

ADMIRALTY (§ 6*)—JURISDICTION—SUITS RELATING TO AEROPLANES.

A court of admiralty is without jurisdiction of a suit to establish and enforce a lien for repairs against an aeroplane, which is not a subject of maritime jurisdiction.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 86–98; Dec. Dig. § 6.*]

In Admiralty. Suit by Andrew Foss against the aeroplane Crawford Bros. No. 2. On exceptions to libel by H. F. Berg, Intervener. Exceptions sustained.

Wedell Foss, of Tacoma, Wash., for libelant.
Hugo Metzler, of Tacoma, Wash., for intervener.

CUSHMAN, District Judge. This is a libel in rem for repairs to an aeroplane. The matter is before the court upon exceptions by an intervening libelant, asserting a salvage claim for having salved the aeroplane after it had fallen into the waters of Commencement Bay, the same being navigable waters of Puget Sound, while on a flight over

said bay. The intervening libelant expressly avers that he does not wish to enforce his maritime lien for salvage. The exception is that the court has no jurisdiction in the matter. .

It is conceded, by counsel for libelant, that there is no precedent for this proceeding, but it is contended that, as jurisdiction in admiralty has, in the past, been extended to meet the needs of commerce and the questions arising therefrom, in the face of this new need the jurisdiction should grapple with the questions arising out of navigation of the air, and not await legislative action.

Familiar instances of the growth or evolution of the admiralty jurisdiction are pointed out: The adoption of navigability as the test of jurisdiction, rather than confining it to the ebb and flow of the tide; its extension to include steam vessels upon their advent, holding floating elevators, dry docks, rafts, and submarine vessels subject to the jurisdiction; the giving of a maritime lien for personal injuries, as well as one to the stevedore. The progress thus shown, it is asserted, warrants the court in assuming jurisdiction of this cause.

In 1909 an International Juridic Committee on Aviation was organized at Paris.

"The committee on January 16, 1910, decided upon the outline of a legal code of the air, which has since been in course of elaboration and progress. upon which is regularly reported in the committee's review. The committee itself consists of jurists, lawyers, and legal students in France and French colonies, several of the states of Germany, Austria-Hungary, Belgium, Brazil, Denmark, Spain, United States, Italy, Monaco, Netherlands, Argentina, Russia, Switzerland, Turkey, Sweden, Great Britain, Scotland, Canada, and Egypt. The national membership forms a national committee acting through a representative executive committee in Paris. This executive committee makes general studies upon a point of law, and issues its preliminary decisions to national committees, which report back their opinions, the whole of which are harmonized so far as possible. The text decided upon in this way is definitely passed at annual congresses, which have been held at Paris in 1911, at Geneva in 1912, and at Frankfort in 1913." Law Notes, April, 1914, page 5.

An examination of the text of the code decided upon by the committee shows a striking similarity between its provisions, in many respects, and the rules now applicable to water craft. This appears in the rules as to the nationality and registration of air craft, flag regulations, documents, the law applicable in different jurisdictions and beyond the limits of any terrestrial jurisdiction, the requirements as to the logbook, and the aerial rules of the road, although air craft would not all, necessarily, move in the same plane. While the committee has gone into much detail and the analogy between air and water craft is strikingly manifested in the proposed code, it has not yet become law. Undoubtedly, it would be important to consider its provisions in determining what was reasonable and proper in a cause involving air craft in a common-law action. It is noticeable that, while recognizing the necessity, so far the proposed code contains no adaptation or modification of the terrestrial common or statute law, nor any application or modification of its principles which will undoubtedly be necessary in view of the passage of such craft over such jurisdictions, and their manifold relations thereto.

In a case of tort, where the jurisdiction is fixed by the locality of the tort, the Supreme Court said:

"A maritime lien can only exist upon movable things engaged in navigation, or upon things which are the subjects of commerce on the high seas or navigable waters. It may arise with reference to vessels, steamers, and rafts, and upon goods and merchandise carried by them. But it cannot arise upon anything which is fixed and immovable, like a wharf, a bridge, or real estate of any kind. Though bridges and wharves may aid commerce by facilitating intercourse on land, or the discharge of cargoes, they are not in any sense the subjects of maritime lien." The Rock Island Bridge, 6 Wall. 213, 216, 18 L. Ed. 753.

In view of the novelty and complexity of the questions that must necessarily arise out of this new engine of transportation and commerce, it appears to the court that, in the absence of legislation conferring jurisdiction, none would obtain in this court, and that questions such as those raised by the libelant must be relegated to the common-law courts, courts of general jurisdiction.

The action of the Juridic Committee on Aviation manifests a recognition of the fact that legislation is necessary for the regulation of air craft. They are neither of the land nor sea, and, not being of the sea or restricted in their activities to navigable waters, they are not maritime.

Exception sustained.