## DOLLINS v. PAN–AMERICAN GRACE AIRWAYS, Inc.

District Court, S. D. New York.
May 4, 1939.

Lloyd, Decker, Williams & Knauth, of New York City (Arnold W. Knauth, of New York City, of counsel), for plaintiff.

Haight, Griffin, Deming & Gardner, of New York City (Donald Havens and David L. Corbin, both of New York City, of counsel), for defendant.

HULBERT, District Judge.

The precise question presented for determination by plaintiff's motion to strike a separate defense from the answer, is whether an airship is a "vessel" within the meaning of R.S. §§ 4283–4289, as amended by Act of June 5, 1936, Chap. 521 (46 U.S.C.A. § 183 et seq.) so as to enable the owner to limit its liability in accordance therewith.

It is admitted by the pleadings that the defendant was, and still is, a Delaware corporation with an office and place of business at 135 East 42nd Street, New York, N. Y., within the jurisdiction of this court; that on or about August 2, 1937, defendant was the owner of an airplane known as NC–15065, and operating the same in foreign commerce upon an advertised schedule between Guayaquil, Ecuador, Cali, Colombia and Cristobal, Canal Zone, as a common carrier of passengers for hire; that in consideration of a fare paid, or to be paid by one Samuel W. Oliver, the defendant agreed to carry him from Guayaquil, Ecuador, to Cristobal, Canal Zone, by airplane; that the airplane was of a flying boat or seaplane type; its hull was in the form of a boat in which the passengers sat, and was designed to float and navigate on the surface of the water, to arise from and alight thereon safely and operate in normal flight as an aircraft, and was so used; it was able to arise from and alight on and move about on water and on land surfaces indifferently, being of an amphibian type, equipped with two engines and two propellors.

On August 2, 1937, the NC–15065 took off from an unnamed place in the Republic of Colombia, bound for Cristobal, Canal Zone, with a number of passengers on board, among whom was the plaintiff's intestate. He never arrived at destination. Wreckage of the plane was discovered on the following day floating on the water some 15 miles from Cristobal. There were no survivors. Plaintiff brings this action as administratrix and guardian of the three children of the decedent to recover damages for his death.

The specific provision of the answer which is the subject of attack reads as follows: "If the defendant is liable in this action for any of the damages demanded in the complaint, which it denies, the same were done, occasioned or incurred without the privity or knowledge of the defendant as owner of said aircraft and the defendant is entitled to limit its liability to the amount or value of its interest in the said aircraft and her freight then pending, pursuant to Section 4283 of the U. S. Revised Statutes and other statutes supplementary thereto and amendatory thereof, and defendant claims the benefit of the same."

It is unnecessary to review the history of the limitation of liability of ship owners.

The Congress has defined the word "vessel" to include: "Every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." (R.S. § 3).

And a "vehicle" as: "Every description of carriage or other artificial contrivance used, or capable of being used, as a means of transportation on land." (R.S. § 4). 1 U.S.C.A. §§ 3 and 4.

The Congress had at last dealt elaborately with the subject of aerial transportation in the Civil Aeronautics Act, 49 U.S.C.A. Chap. 9, § 401 et seq., but we are concerned with the law existing as of August 2, 1937.

In the case of The Crawford Bros. No. 2, D.C.,1914, 215 F. 269, 271, the court citing familiar instances of the growth or evolution of the admiralty jurisdiction, with respect to aircraft, said: "They are neither of the land nor sea, and, not being of the sea or restricted in their activities to navigable waters, they are not maritime."

The claim of Aksel E. Reinhardt v. Newport Flying Service Corporation, et al., which had originated in the New York State Compensation Commission, came before the Court of Appeals, 1921, 232 N.Y. 115, 133 N.E. 371, 18 A.L.R. 1324. Claimant had been employed in the care and management of a hydro-aeroplane operating between New York and Miami, Florida. While moored in the navigable waters of New York Harbor the craft dragged anchor and drifted toward the beach where it was in danger of being wrecked. Reinhardt waded into the water to turn the plane about and was struck by one of the propellors. The late lamented Justice Cardozo, then a member of that court said:

"The latest of man's devices for locomotion has invaded the navigable waters, the most ancient of his highways. Riding at anchor is a new craft which would have mystified the Lord High Admiral in the days when he was competing for jurisdiction with Coke and the courts of common law [Citing cases].

"We think the craft, though new, is subject, while afloat, to the tribunals of the sea. Vessels in navigable waters are within the jurisdiction of the admiralty."

And so the judgment was reversed.

The Act of Congress May 20, 1926 (44 Stat.Chap. 344), an Act to encourage and regulate the use of aircraft in commerce and for other purposes, provided (49 U.S.C.A. § 177): "Section 7 [§ 177]. *Application of existing laws relating to foreign commerce*. (a) The navigation and shipping laws of the United States, including any definition of 'vessel' or 'vehicle' found therein and including the rules for the prevention of collisions, shall not be construed to apply to seaplanes or other aircraft. * * *"

In the case of U. S. v. One Fairchild Seaplane, et al., Northwest Air Service, Inc., D.C., Intervener, 6 F.Supp. 579, a libel was filed by the United States against the seaplane for violation of Customs Laws upon arrival from Canada in July, 1932, at the airport at Bryn Mawr on Lake Washington. There was, however, no seizure by the officials of the Customs until September. Meanwhile in the course of repairs made to the seaplane at her mooring, the engine had been detached from the fuselage and removed to another plant of the intervener on shore and for the service rendered the repairman asserted a maritime lien, claiming priority therefor. The Court, without making reference to its previous decision in The Crawford Bros. No. 2, supra, held that Section 7 (a) did not deny a maritime lien to one who repaired a seaplane under the circumstances shown because the general words "shipping laws" in Section 7(a) followed the particular words "foreign commerce" of Section 7, and the statute governing a maritime lien for repairs (46 U.S.C.A. § 971) was not restricted to foreign commerce or foreign aircraft. Upon appeal to the Circuit Court of Appeals (Fifth Circuit) the decree was reversed. United States v. Northwest Air Service, 9 Cir., 80 F.2d 804, 805. Mathews, C. J., said: "Although a seaplane, while afloat on navigable waters of the United States, may be a vessel within the admiralty jurisdiction [citing Reinhardt v. Newport Flying Service, supra] it is not such a vessel while stored in a hangar on dry land, with its engine in a shop, also on dry land, undergoing repairs, nor does the making of such repairs create a maritime lien [citing The Crawford Bros. No. 2]."

The disposition of this motion turns upon the ascertainment of the intent of the Congress in granting limitation of liability to the owners of vessels.

The fundamental purpose underlying the original limitation of liability statute of 1851 (R.S. § 4283 et seq.) was to build up the American Merchant Marine and place it on a parity with that of other nations.

While, of course, the defendant's airship must effect its ascent either from (and likewise its descent upon) water or land, its real purpose is to navigate through the air, although it may operate on the water in a smooth sea, but that is purely an auxiliary function.

It does not seem conceivable to me that it can be seriously contended that the Congress ever had such craft in mind in granting a limitation of liability to the owner of

a vessel, if such this be, within the definition contained in R.S. § 3, 1 U.S.C.A. § 3.

An examination of the hearings resulting in the passage of the Act of June 5, 1936 (46 U.S.C.A. § 183 et seq.) otherwise indicate. That legislation was prompted by the Morro Castle disaster and others practically contemporaneous on the high seas. The very genesis of the amendment was to assure a greater measure of protection to claimants and prompted the Congress to make limitation of liability dependent upon the tonnage of the vessel. Certainly it cannot be said that any species of airplane was contemplated whatsoever in that connection.

It is also urged by the plaintiff that the purpose of the amendment of June 5, 1936, was to cut down the rights and privileges of the ship owner and to set up a time limit for the filing of a petition for limitation of liability where there was none before. But I do not, however, regard the determination of that question as necessary since my conclusion is that defendant's airship is not a "vessel" within the meaning of the limitation of liability statute, and the motion will be granted and the separate defense stricken from the answer. Settle order on two days' notice.