[No. A093146. First Dist., Div. Three. Jan. 9, 2002.]

MARY FREEZE, Plaintiff and Appellant, v.
LOST ISLE PARTNERS, Defendant and Respondent.

[No. A093390. First Dist., Div. Three. Jan. 9, 2002.]

MARY FREEZE, Plaintiff and Respondent, v.
LOST ISLE PARTNERS, Defendant and Appellant.

[black redaction bars]

## COUNSEL

Lyle C. Cavin, Jr.; Law Offices of Joseph William Klobas, Joseph William Klobas and Ronald Klein for Plaintiff and Appellant and for Plaintiff and Respondent.

Cox, Wootton, Griffin & Hansen, Terence S. Cox, Frederick J. Carr and Marc T. Cefalu for Defendant and Appellant and for Defendant and Respondent.

## OPINION

**McGUINESS, P. J.**—Plaintiff Mary Freeze was injured while she moored a barge owned by her employer, defendant Lost Isle Partners (Lost Isle). In her amended complaint, she sought relief under the Jones Act (46 U.S.C. Appen. § 688(a)) and the Longshore and Harbor Workers' Compensation Act (LHWCA) (33 U.S.C. § 905(b)). Additionally, Freeze alleged claims of negligence and unseaworthiness of a vessel under general maritime law. During the trial, Freeze abandoned her LHWCA claim because she was excluded from coverage under that act. She requested the court to instruct the jury on her other causes of action, in the alternative, contending that the negligence and unseaworthiness claims were not dependent on her entitlement to relief under the Jones Act. The trial court refused to charge the jury as requested by Freeze. Instead, the jury was directed not to consider the general maritime causes of action if they found Freeze was not a "seaman" under the Jones Act. The jury found in favor of Lost Isle on the Jones Act claim, determining that Freeze was not a "seaman." After a judgment in favor of Lost Isle was filed on September 7, 2000, Freeze filed a timely notice of appeal. By a subsequent order filed November 8, 2000, the trial court granted Freeze's motion to strike Lost Isle's bill of costs after judgment. Lost Isle filed a timely notice of appeal from the November 8, 2000 order.

On appeal from the judgment, Freeze correctly argues that the trial court's instruction to the jury limiting their consideration of her general maritime claims was prejudicial error. Therefore, we reverse the judgment and remand

for a new trial on those claims. In light of our disposition of Freeze's appeal, we dismiss as moot Lost Isle's appeal from the order denying its request for costs after judgment.

*Facts*

Because the only issue on Freeze's appeal is the trial court's refusal to direct the jury to consider her general maritime causes of action, we assume the jury might have believed the evidence and drawn all inferences most favorable to Freeze, and " 'if properly instructed, might have decided in [Freeze's] favor. [Citations.]' (*Shell Oil Co. v. Winterthur Swiss Ins. Co.* (1993) 12 Cal.App.4th 715, 773 [15 Cal.Rptr.2d 815].) Accordingly, we state the facts most favorably to [Freeze,] in accordance with the customary rule of appellate review. (*Sills v. Los Angeles Transit Lines* (1953) 40 Cal.2d 630, 633 [255 P.2d 795].)" (*Logacz v. Limansky* (1999) 71 Cal.App.4th 1149, 1152, fn. 2 [84 Cal.Rptr.2d 257].)

During 1996 and 1997, Freeze was employed as a "laborer, construction; just kind of all-around duties" at a summer seasonal bar and restaurant. The resort owned by Lost Isle was located on an island in the delta of the San Joaquin River. As part of her duties, Freeze operated a pontoon boat, referred to as a barge, which was owned by Lost Isle. The barge was used to transport employees, supplies, and customers to the island from the mainland. It was usually operated with two people: one person steered the barge and the other person acted as a lookout and assisted in the mooring of the barge. Freeze was taught to operate and moor the barge by Bob Garnett, another Lost Isle employee. She did not otherwise receive any safety instruction or manuals concerning the operation of the barge. When she was operating the barge, Freeze sometimes allowed another employee, Tyrell Armstrong, to steer the barge. Armstrong had been working at the club for two to three months before Freeze's accident. Bob Garnett, as well as Freeze, had attempted to teach Armstrong how to operate the barge. But according to Garnett, Armstrong, who had no prior experience operating a boat, was not able to handle the barge.

On the day of the accident in September of 1997, Freeze and Armstrong had taken the barge from the island to the mainland to pick up a supply of water. On the return trip, Armstrong was operating the barge. As the barge approached the dock on the island, it was moving two or three miles an hour. Freeze stepped off the boat, with the mooring rope or line wrapped around her right hand. Using her left hand, Freeze formed a "figure eight" with the rope around a cleat on the dock. Freeze told Armstrong that she "got it," and he could shut off the engine. However, before the dock rope was fully

secure, Armstrong "accident[al]ly" turned the barge's throttle the wrong way, causing the engine to start rather than stop. As the barge moved, the mooring rope slipped from the cleat. That part of the rope still wrapped around Freeze's right hand "crossed over" her hand tightly, crushing her hand.

Freeze's expert witness, Paul Anderson, testified that based on Freeze's description of the accident, he believed Armstrong's starting the engine was unsafe under the circumstances and that had Armstrong not started the engine, the accident would not have happened. Additionally, Anderson testified that a common technique used in docking boats, small and large, involved using a spring line on the dock and accelerating the boat against the line very slowly. But accelerating the boat quickly could cause the line to pop and maybe kill someone. Defense expert David Stuhlbarg conceded that it was not consistent with sound teaching principles to tell someone to wrap a line around a hand when handling lines under tension because if the lines became tight, it could cause an accident.

### Discussion

### Freeze's Appeal from the Judgment Filed September 7, 2000

Freeze argues that the jury finding that she was not a seaman for purposes of the Jones Act does not dispose of her alternative causes of action for unseaworthiness and negligence. We agree. Freeze's right to seek alternative relief for her damages under general maritime law is separate from the issue of whether she was a "seaman" under the Jones Act. (*In re Holoholo Litigation* (D.Hawaii 1983) 557 F.Supp. 1024, 1029 fn. 1.)

"While there is considerable overlapping between" the claims, "there is simply neither authoritative precedent nor reasons of policy for imposing whatever limitations exist in Jones Act litigation on general federal admiralty law, from which the doctrine of unseaworthiness is derived." (*Baptiste v. Superior Court* (1980) 106 Cal.App.3d 87, 103 [164 Cal.Rptr. 789].) Specifically, the test for seaman status under the Jones Act is different from the test for seaman status for purposes of an unseaworthiness claim. "The Jones Act provides a cause of action in negligence for 'any seaman' injured 'in the course of his [or her] employment' 46 U.S.C. App. § 688(a)." (*Chandris, Inc. v. Latsis* (1995) 515 U.S. 347, 354 [115 S.Ct. 2172, 2183, 132 L.Ed.2d 314].) Under the Jones Act, a worker, in addition to being injured while "doing the ship's work," must also have a "connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature." (*Id.* at p. 368 [115 S.Ct. at p. 2190].) However, under general

maritime law, a ship owner is held liable to indemnify crew members for an injury caused by the unseaworthiness of the vessel, and "the liability applies as well when the ship is moored at a dock as when it is at sea." (*Seas Shipping Co. v. Sieracki* (1946) 328 U.S. 85, 90 [66 S.Ct. 872, 875, 90 L.Ed. 1099] (*Sieracki*).) In *Sieracki*, the Supreme Court extended the seaman's seaworthiness warranty to those workers, other than crew members, who were injured while working on board a ship in navigable waters "because he [or she] is doing a seaman's work and incurring a seaman's hazards." (*Id.* at p. 99 [66 S.Ct. at p. 880]; *Pope & Talbot, Inc. v. Hawn* (1953) 346 U.S. 406, 415 [74 S.Ct. 202, 208, 98 L.Ed. 143] (conc. opn. of Frankfurter, J.).) Thus, "[t]he test of seaman status for the purposes of the unseaworthiness remedy is . . . based on the 'type of work the plaintiff did [when injured] and its relationship to the ship.' " (*Cavin v. State, Fish and Wildlife Protection* (Alaska 2000) 3 P.3d 323, 330; see *McDermott International, Inc. v. Wilander* (1991) 498 U.S. 337, 354 [111 S.Ct. 807, 817, 112 L.Ed.2d 866].)

It therefore cannot be said that seaman status under general maritime law precludes an unseaworthiness claim merely because such a worker does not meet the more stringent test of a seaman required for relief under the Jones Act. Regardless of Freeze's right to relief under any statutory protections, the trial court should have instructed the jury to consider Freeze's unseaworthiness claim. If properly instructed, the jury could have found based on Freeze's testimony that at the time of her injury, she was acting as a crew member of the barge performing the traditional maritime activity of mooring the vessel.

Lost Isle's argument that Freeze's seaworthiness claim was nullified by the 1972 amendments to the LHWCA, which eliminated the seaworthiness claim for workers covered under the Act, is unpersuasive. While the LHWCA expressly "provides scheduled compensation (and the exclusive remedy) for injury to a broad range of land-based maritime workers," it "explicitly excludes from its coverage" certain workers, including Freeze. (*Chandris, Inc. v. Latsis, supra,* 515 U.S. at p. 355 [115 S.Ct. at p. 2183]; 33 U.S.C. § 902(3)(B) [excluding "individuals employed by a club, camp, recreational operation, restaurant, museum, or retail outlet," if individuals are subject to coverage under a state worker's compensation law].) Thus, workers "who are not entitled to LHWCA benefits may still pursue their general maritime claims against the vessel owner." (*Green v. Vermilion Corp.* (5th Cir. 1998) 144 F.3d 332, 337 (*Green*); see *Chandris, Inc. v. Latsis, supra,* 515 U.S. at p. 356 [115 S.Ct. at p. 2184] [workers not covered under the Jones Act or the LHWCA "may still recover under an applicable state workers' compensation scheme *or* in admiralty, under general maritime tort principles (which are admittedly less generous than the Jones Act's protections). [Citation.]." (Italics added.)].) To the extent *Normile v. Maritime Co.*

*of the Philippines* (9th Cir. 1981) 643 F.2d 1380, 1382-1383, can be read to hold that the 1972 amendments to the LWHCA eliminated the *Sieracki* seaworthiness claim for workers not covered by either the Jones Act or the LHWCA, we decline to follow it. (See *Cavin v. State, Fish and Wildlife Protection, supra,* 3 P.3d at pp. 330-332 [limiting *Normile* to its specific facts regarding longshore workers]; see also *Cormier v. Oceanic Contractors, Inc.* (5th Cir. 1983) 696 F.2d 1112, 1113 [following *Aparicio v. Swan Lake* (5th Cir. 1981) 643 F.2d 1109, 1117, which rejected *Normile's* premise that the 1972 amendments effectively overruled *Sieracki*].)

Additionally, Freeze is entitled to pursue her alternative claim for negligence under general maritime law. In *Pope & Talbot, Inc. v. Hawn, supra,* 346 U.S. at pages 413-414 [74 S.Ct. at page 207], the Supreme Court recognized that while a *Sieracki* seaman was granted the additional claim of unseaworthiness for injuries incurred on shipboard, that worker was not deprived of his or her "long-recognized right to recover in admiralty for negligence."

We further conclude that Freeze's general maritime claims against her employer are not barred by the exclusivity provision of California's Workers' Compensation Act (Lab. Code, § 3601). (*Green, supra,* 144 F.3d at p. 339.) In *Green,* the Court of Appeals for the Fifth Circuit addressed the remedies available to a worker at a duck camp who performed duties similar to those performed by Freeze. Like Freeze, Green was injured while assisting another employee in mooring a vessel owned by Green's employer. In holding that Green was entitled to pursue both negligence and unseaworthiness claims against his employer despite an exclusive provision in a state workers' compensation act, the Fifth Circuit relied in part on the Supreme Court's decisions in *John Baizley Iron Works v. Span* (1930) 281 U.S. 222, 230-231 [50 S.Ct. 306, 307-308, 74 L.Ed. 819], and *Director, OWCP v. Perini North River Associates* (1983) 459 U.S. 297, 306 [103 S.Ct. 634, 641, 74 L.Ed.2d 465] (*Perini*). Those cases held that "the state workers' compensation statutes could only apply where the maritime tort involved matters of local concern which had remote or no relation to navigation or maritime commerce." (*Green, supra,* 144 F.3d at p. 340, fn. omitted.) Here, Freeze's injury was neither remote nor unrelated to navigation or maritime commerce. Freeze was not "transiently or fortuitously" on navigable waters when she was injured. (*Perini, supra,* 459 U.S. at p. 324, fn. 34 [103 S.Ct. at p. 651].) It was not disputed that her operation of the barge was part of her employment duties, and not incidental thereto.

As to whether the evidence would have supported a finding in favor of Freeze on her general maritime claims, we note that "[p]arties have the

'right to have the jury instructed as to the law applicable to all their theories of the case which were supported by the pleadings and the evidence, whether or not that evidence was considered persuasive by the trial court.' [Citation.] 'A reviewing court must review the evidence most favorable to the contention that the requested instruction is applicable since the parties are entitled to an instruction thereon if the evidence so viewed could establish the elements of the theory presented. [Citation.]' [Citation.]" (*Maxwell v. Powers* (1994) 22 Cal.App.4th 1596, 1607 [28 Cal.Rptr.2d 62].) ▮ The evidence here, when viewed in the light most favorable to Freeze, as we must on this issue, does suggest that her injury may have been caused by Lost Isle's failure to properly train its employees on the proper methods of operating and mooring the barge, which would render the ship unseaworthy. (*Usner v. Luckenbach Overseas Corp.* (1971) 400 U.S. 494, 499 [91 S.Ct. 514, 517, 27 L.Ed.2d 562] [vessel's condition of unseaworthiness may arise from the unfitness of her crew].) Moreover, the jury could have concluded from the evidence that Lost Isle's management staff was aware that both Freeze and Armstrong worked on the barge despite the lack of proper training. While Lost Isle presented evidence refuting Freeze's contentions, her claims cannot be resolved as a matter of law.

### Lost Isle's Appeal from the Order Filed November 8, 2000

Because we conclude that the judgment must be reversed and the matter remanded for a new trial on Freeze's general maritime claims, we need not address Lost Isle's claim that the trial court improperly refused to consider its bill for costs after judgment. Accordingly, Lost Isle's appeal from the order filed November 8, 2000, striking its bill of costs is dismissed as moot.

### Disposition

The judgment filed September 7, 2000, is reversed and the matter is remanded for a new trial on Freeze's general maritime claims. Lost Isle's appeal from the order filed November 8, 2000, is dismissed as moot. Freeze shall recover her costs on these appeals.

Corrigan, J., and Parrilli, J., concurred.

The petition of appellant Lost Isle Partners for review by the Supreme Court was denied May 1, 2002.