[No. B195738. Second Dist., Div. Eight. Sept. 24, 2008.]

TAREK BOURGI, Plaintiff and Respondent, v.
WEST COVINA MOTORS, INC., et al., Defendants and Appellants.

## COUNSEL

Oldman, Cooley, Sallus, Gold, Birnberg & Coleman, Ron Gold; Law Offices of Norman Hoffman and Norman Hoffman for Defendants and Appellants.

Manning, Leaver, Bruder & Berberich and Halbert B. Rasmussen for California New Car Dealers Association as Amicus Curiae on behalf of Defendants and Appellants.

Dumbeck & Dumbeck, Jason D. Dumbeck and Curtis M. King for Plaintiff and Respondent.

## OPINION

**FLIER, J.**—Does damage to a new automobile in a dealer's inventory, however minor and regardless of repair, necessarily strip the vehicle of its status as "new" under the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.)? After considering the Vehicle Code's definition of "new vehicle" (§ 430), and its damage disclosure (§§ 9990–9993) and safe harbor provisions for minor repaired damage (§§ 9990, 9991), we hold that it does not.[1] However, under the circumstances of the case, the trial court should have allowed the jury to determine as an issue of fact whether repairs made to the subject vehicle prior to sale qualified the vehicle as "new" within the definition of the Vehicle Code.

In this case, respondent Tarek Bourgi purchased as new a General Motors Corporation 2003 Hummer H2 (Hummer) from appellant West Covina Motors, Inc., doing business as Hummer of West Covina. After learning the Hummer had been damaged and repaired before its sale, respondent filed this action for alleged concealment, violation of the CLRA, unjust enrichment, and false advertising under the unfair competition law (Bus. & Prof. Code, § 17500).

---

[1] Unless otherwise indicated, all further section references are to the Vehicle Code.

Section 430 defines a "new" vehicle as one "constructed entirely from new parts that has never been the subject of a retail sale, or registered" with an appropriate government agency or authority.

Section 9990, subdivision (a) defines "material" damage as damage requiring "repairs having a value, including parts and labor calculated at the repairer's cost, exceeding 3 percent of the manufacturer's suggested retail price of the vehicle or five hundred dollars ($500), whichever is greater." The statute further provides that "[t]he replacement of damaged or stolen components, excluding the cost of repainting or refinishing those components, if replaced by the installation of new original manufacturer's equipment, parts, or accessories that are bolted or otherwise attached as a unit to the vehicle, including, but not limited to, the hood, bumpers, fenders, mechanical parts, instrument panels, moldings, glass, tires, wheels, and electronic instruments, shall be excluded from the damage calculation . . . ."

Section 9990 further defines "material" damage to include damage "to the frame or drive train of the motor vehicle" (subd. (b)), damage that "occurred in connection with a theft of the entire vehicle" (subd. (c)), and damage "to the suspension of the vehicle requiring repairs other than wheel balancing or alignment" (subd. (d)).

Section 9991 provides, "Every dealer shall disclose in writing to the purchaser of a new or previously unregistered motor vehicle, prior to entering into a contract for the vehicle or, if unknown at that time, prior to delivery of the vehicle, any material damage known by the dealer to have been sustained by the vehicle and subsequently repaired."

Section 9992 requires every dealer of a new or previously unregistered motor vehicle to disclose in writing to the purchaser before a contract of sale or, if previously unknown, prior to delivery, "any damage, including, but not limited to, material damage, known by the dealer to have been sustained by the vehicle and not repaired."

Section 9993 provides that "[n]othing in this chapter permits any dealer to respond to the inquiry of a purchaser in any untrue or misleading manner."

Appellant moved for summary judgment or summary adjudication of issues (summary judgment), asserting it was not obliged to affirmatively disclose the repaired damage because it fell within the safe harbor provisions under sections 9990 and 9991 for minor repaired damage amounting to less than 3 percent of the manufacturer's suggested retail price (MSRP). The trial court denied appellant's motion, ruling the safe harbor provisions did not relieve appellant of a duty to disclose presale damage or repair. After trial, the jury rendered a verdict in favor of respondent.

We conclude under the evidence presented that there was a triable issue of fact whether the damage was completely or adequately repaired, and the trial court properly denied the motion for summary judgment. We hold, however, that the trial court erred in refusing to allow the jury to consider the safe harbor provisions in its determination of liability. We therefore reverse the judgment in part as set forth below.

### FACTS[2]

Respondent purchased the Hummer from appellant in January 2004. The MSRP of the Hummer was $54,180, but, with accessories, tax and license, the out-the-door purchase price was $69,597.21. Respondent paid a $15,000 cash downpayment and financed the remaining balance of $54,597.21.

Respondent and appellant had no relationship other than buyer and seller of the Hummer. At the time of sale, appellant did not disclose to respondent that the Hummer had previously been vandalized and repaired and that appellant had made an insurance claim for the damage.

The Hummer was on display in an area of appellant's lot where new cars were displayed, and the word "new" appeared on the contract for purchase. Respondent walked around the Hummer to look at all the options before test-driving and purchasing the vehicle. Appellant admittedly made no verbal representations to respondent about the Hummer or its features before selling him the vehicle.

In June 2004, respondent brought his Hummer to appellant's dealership for warranty repair of the weatherstrip and right rear door glass run.[3] The parts were not then available, and appellant placed them on order.

---

[2] The basic facts, which are essentially undisputed, are taken primarily from appellant's motion for summary judgment.

[3] The Hummer had a manufacturer's express warranty against defects for three years or 36,000 miles, whichever came first.

While at the dealership, respondent asked one of appellant's service representatives to inspect the weatherstrip on the vehicle. The service representative examined the Hummer and told respondent he could tell the vehicle had been painted. He printed the vehicle's history for respondent, and the history showed the Hummer had been vandalized before respondent purchased it.

Respondent did not return to respondent's dealership to have the ordered parts installed. Instead, he demanded that the sale be rescinded and the Hummer exchanged for a new vehicle. Appellant's manager refused.

## PROCEDURAL HISTORY

Respondent filed this action in May 2005. Respondent's amended complaint alleged concealment, violation of the CLRA, unjust enrichment and false advertising under the unfair competition law. The amended complaint alleged that, about a month after respondent purchased the Hummer, he learned it had been vandalized and damaged in a nighttime attack by a member of the Earth Liberation Front. Over 100 sport utility vehicles had been burned, spray painted and smashed in the attack.

While negotiating for the sale of the Hummer, appellant's employees allegedly concealed from respondent the fact that the vehicle had been damaged in the attack and was the subject of an insurance claim. Respondent asserted appellant violated the CLRA because its employees had represented that the vehicle was original or new when in fact it was "altered, reconditioned, reclaimed, used, or secondhand." (Civ. Code, § 1770, subd. (a)(6).)[4]

Respondent sought rescission and restitution, economic and noneconomic damages, an injunction, punitive damages, attorney fees and costs.

In its affirmative defense, appellant asserted it was not obliged to disclose nonmaterial damage under the safe harbor provisions of the Vehicle Code. Appellant moved for summary judgment on this basis.

Appellant contended sections 9990 and 9991 set forth statutory guidelines prescribing what prior repaired damage to new vehicles is sufficiently "material" to require disclosure by a new car dealer to a customer purchasing a vehicle as "new." Under section 9990, subdivision (a), appellant argued,

---

[4] Civil Code section 1770, subdivision (a)(6) makes unlawful unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale of goods or services to any consumer by "[r]epresenting that goods are original or new if they have deteriorated unreasonably or are altered, reconditioned, reclaimed, used, or secondhand."

reportable damage sustained by a "new" motor vehicle is material and requires disclosure only when the damage required repairs "having a value, including parts and labor calculated at the repairer's cost, exceeding 3 percent of the manufacturer's suggested retail price of the vehicle or five hundred dollars ($500), whichever is greater." Appellant asserted that, because the total cost of parts and labor for repairs to the Hummer was only approximately 1.3245 percent of its MSRP, the damage was not "material" under sections 9990 and 9991.

In opposition to the motion for summary judgment, respondent offered the declaration of an expert opining that the entire right side of the vehicle had been "repaired" (i.e., repainted) and the right passenger window replaced with aftermarket glass. Among other things, respondent's expert found a "tight, dry, 'orange-peely' texture" and "[c]lear-coat runs" in repainted areas on the vehicle.

The trial court denied appellant's motion for summary judgment. The court was persuaded by respondent's contention that the Hummer was not "repaired" because the repairs were below industry and manufacturer standards and were of such poor quality that appellant's own service representative spotted the repaint work and pointed out the defects to respondent. The court concluded that if it were to strictly construe section 9992 to encompass every repair ever made by the seller, a purchaser would be left without a remedy if the repairs were substandard. Giving respondent's declarations a liberal construction, the trial court concluded a trier of fact must determine "whether the repairs were indeed adequate to be excepted from the mandatory disclosure provisions of [section] 9992" and "whether the damage was adequately 'repaired.' "

The case proceeded to a jury trial. Respondent's expert testified at trial that the repainting by appellant was not of "factory quality" and did not meet industry standards. He found paint overspray on the vehicle that indicated some areas were not taped off properly or that trim pieces were not removed prior to repainting. Other areas, he stated, were not properly sanded after painting. The expert testified the inadequate repair affected the marketability of the vehicle. He estimated the vehicle's value was diminished by approximately 20 percent because of the poor repair.

A manufacturer's representative testifying as a defense expert opined that appellant had done a "great job" of repairing the vehicle and met or exceeded the manufacturer's standards for warranty repair. Any matter needing additional attention, he indicated, was insubstantial and did not affect the vehicle's value.

The court and the jury viewed photographs of the vehicle and the vehicle itself at trial.

During the trial, except as a defense to plaintiff's punitive damages claim, the court refused to allow appellant to assert the 3 percent cost-of-repair safe harbor provisions of the Vehicle Code.

In a special verdict, the jury found that (1) appellant violated the CLRA in failing to disclose the Hummer had been vandalized and had undergone minor repairs prior to the purchase; (2) the purchase contract should be rescinded; and (3) appellant was not guilty of fraud in the sale of the Hummer. Significantly, the jury decided no punitive damages were warranted.

The court entered a judgment rescinding the purchase contract and awarding respondent restitution of his downpayment of $15,000 and installment payments amounting to $31,972.16. The court directed that the Hummer be returned to appellant. The court also awarded respondent costs of $4,398.91, prejudgment interest of $8,041.93 and attorney fees of $128,070.

Appellant timely appealed.

## DISCUSSION

### 1. *Introduction*

On appeal, appellant contends the trial court erred in denying its motion for summary judgment under the Vehicle Code safe harbor provisions. Respondent argues appellant cannot challenge the denial of its summary judgment motion on appeal because it received a full trial on the merits before a jury covering the same issues. (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 834, 836 [16 Cal.Rptr.2d 38].) We disagree with both parties. As we see the case, the error came about in the trial, not the summary judgment, proceedings.

A denial of a motion for summary judgment may be reviewed by postjudgment appeal in an appropriate case. (*Gackstetter v. Frawley* (2006) 135 Cal.App.4th 1257, 1269–1270 [38 Cal.Rptr.3d 333] [discussing conflicting authorities on issue]; see also *Schmidlin v. City of Palo Alto* (2007) 157 Cal.App.4th 728, 786 [69 Cal.Rptr.3d 365] [denial of motion for summary adjudication reviewable in appeal from judgment when legal ruling "completely undermined" appellant's defense].) We find this to be an appropriate case.

As we will explain, however, the trial court properly denied the motion for summary judgment because, under the evidence presented, there was a triable

issue of fact whether the Hummer was a "new" vehicle under the Vehicle Code. We also conclude, however, that the court's subsequent rulings at trial precluded appellant from asserting a crucial defense.

In his opening statement, when counsel for appellant told the jury he intended to prove the Hummer was a "new" vehicle under the Vehicle Code because it had suffered damage worth less than 3 percent of the purchase price, the court sustained respondent's objection, telling the jury "you will receive the instructions of the court regarding the definitions." But, at the end of the trial, the court instructed the jury it could consider the Vehicle Code definition of "new" vehicle, only for the limited purpose of determining whether appellant's conduct justified punitive damages. As we will discuss, this limitation on the safe harbor provisions was error.

## 2. *Reconciliation of the CLRA and Vehicle Code Safe Harbor Provisions*

### A. *Overview of the Legislation*

The parties agree that this case involves the interplay between two separate statutory schemes.

■ First is the CLRA, a multifaceted piece of consumer legislation found in the Civil Code. (Civ. Code, §§ 1750–1784.) It lists 23 business practices as "unlawful." (*Id.*, § 1770, subd. (a).) The substantive purpose of the statute, as stated by the Legislature in Civil Code section 1760, is "to protect consumers against unfair and deceptive business practices." The CLRA is a generic consumer protection statute and does not focus on the automotive or any other industry (except for brief references to the furniture industry). Respondent argues appellant's nondisclosed repairs violate section 1770, subdivision (a)(6), which makes it unlawful to represent goods as new "if they have deteriorated unreasonably or are altered, reconditioned, reclaimed, used, or secondhand." A vehicle that has been repaired cannot be new because by definition it has been at least altered and reconditioned, so respondent's argument goes. There are no reported cases analyzing section 1770, subdivision (a)(6), and our review of the legislative history reveals nothing of significance to the present dispute.

■ In contrast to the general application of the CLRA, section 9990 et seq. applies expressly to motor vehicles. These provisions are found in the Vehicle Code, not the broader Civil Code. The Vehicle Code provisions were enacted in 1990, 20 years after the CLRA. The damage disclosure law for new vehicles addresses the duties of a dealer with respect to both repaired and unrepaired damage. Section 9991 provides that damage that has been repaired must be disclosed only if the damage was "material" under the

definition set forth in section 9990. Under section 9990, with exceptions not applicable here, damage in general is "material" if the repairer's cost exceeds a threshold equal to 3 percent of the MSRP of the vehicle or $500, whichever is greater. The Legislature thus has declared that damage that has been repaired at a cost at or below the threshold is not "material" and need not be disclosed. By allowing dealers to repair minor damage below the 3 percent threshold and sell a vehicle as new without further disclosure of the damage, the damage disclosure law provides a safe harbor for such conduct.[5]

The parties naturally rely on the different laws for their respective positions. Respondent asserts that the CLRA is automatically triggered by damage to and repair of a new vehicle and that the "less than 3% of MSRP" rule provides no defense and has no relevance to the application of the CLRA. Appellant points to the express language of the Vehicle Code as indicating the legislative intent that repairs a dealer need not disclose under sections 9990 and 9991 mean those repairs do not convert a new car into a used one. Hence there is no misrepresentation under Civil Code section 1770, subdivision (a)(6).

■ We start our analysis of the application of these two legislative schemes with some familiar rules of statutory interpretation. In construing a statute, we first examine the actual words of the statute, giving them a "plain and commonsense" meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].) Generally, when two statutes relate to the same subject, the more specific one will control unless they can be reconciled. (*Id.* at pp. 476–477.) The court must construe the statutes with reference to each other and harmonize them in such a way that no part of them becomes surplusage. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 779 [38 Cal.Rptr.2d 699, 889 P.2d 1019]; *Lincoln Place Tenants Assn. v. City of Los Angeles* (2007) 155 Cal.App.4th 425, 440–441 [66 Cal.Rptr.3d 120].) We must if at all possible avoid repeals by implication. (*Garcia v. McCutchen, supra,* at p. 477.)

B. *The CLRA Does Not Expressly Prohibit a Dealer from Representing a Vehicle with Minor Repaired Damage As "New"*

■ The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." (Civ. Code, § 1770, subd. (a).) These acts or practices include "[r]epresenting that goods are original or new if they have deteriorated

---

[5] As noted, section 9993, however, provides that nothing in the disclosure law permits a dealer to respond to the inquiry of a purchaser in an untrue or misleading manner.

unreasonably or are altered, reconditioned, reclaimed, used, or secondhand." (Civ. Code, § 1770, subd. (a)(6).) The statute does not set forth rules concerning damage or repair but instead establishes standards that provide guidance in determining whether a merchant has deceptively designated goods as "new" or "original." Of the six factors that disqualify a new item from retaining that description, neither "damaged" nor "repaired" is listed. A damaged and repaired vehicle may rise to a level sufficient to trigger one or more of those factors, but a trier of fact must evaluate the degree of damage and repair in the context of the *particular goods and transaction* involved to determine whether there has been a misrepresentation.

## C. *The CLRA Must Be Read in Harmony with the Vehicle Code*

Amicus curiae California New Car Dealers Association (Car Dealers Association) urges us to reject respondent's contention that damage to a new vehicle in a dealer's inventory, however minor and regardless of perfect repair, strips the vehicle of its status as "new" as a matter of law under the CLRA. The Car Dealers Association states that dealers rely upon the bright-line test laid out in the Vehicle Code's damage disclosure law for determining when repaired damage crosses the line and becomes material and must be disclosed. Approximately three million new and used vehicles are sold by the association's dealer members each year and a small, but not inconsequential, number of these vehicles will have sustained "superficial but entirely repairable" scratches, dings or other minor damage. The association indicates that California dealers employ the Vehicle Code's definitions of a "new" and "used" vehicle in determining when they must recharacterize an otherwise new vehicle as "used." Business practices and consumer expectations would undergo a drastic change if dealers could no longer rely on these precise definitions and requirements.

We find the Car Dealers Association's arguments persuasive. Interpreting Civil Code section 1770, subdivision (a)(6) as not being triggered by damage and repair alone (if the damage and repair falls under the threshold of § 9991) would allow the later-enacted damage disclosure law for new vehicles (§ 9990 et seq.) to retain its significance while also preserving the efficacy of the CLRA.

## D. *Civil Code Section 1770, Subdivision (a)(6) Is Presumptively Not Applicable When Repairs Are Below the Vehicle Code Materiality Threshold*

In the context of a new motor vehicle, the provisions of the CLRA must be read together with the safe harbor provision for minor repaired damage under the Vehicle Code (§§ 9990, 9991) since both statutes serve similar purposes. The purpose of Civil Code section 1770, subdivision (a)(6)

is to prevent the sale of goods as "new" when the goods "have deteriorated unreasonably or are altered, reconditioned, reclaimed, used, or secondhand." A central purpose of the Vehicle Code damage disclosure law in section 9990 et seq. is to establish a clearly defined line between damage to a new vehicle that is so immaterial that it need not be disclosed when the vehicle is sold if repaired, and more severe damage that is deemed material and must be disclosed.

Although the Legislature has not defined the terms "deteriorated . . . altered, reconditioned, reclaimed, used, or secondhand" in the CLRA, the Legislature has clearly demarcated the line between a "new" and "used" vehicle in the Vehicle Code.[6] And, it has created a safe harbor for minor repaired damage to new vehicles in sections 9990 and 9991 and specified the circumstances under which disclosure of damage is mandated in sections 9992 and 9993. These Vehicle Code provisions would be rendered nugatory if the CLRA would automatically strip a new vehicle of such designation once it sustains *any* damage, however minor, prior to sale.

The California Legislature has provided as a matter of policy that new vehicle dealers are afforded a safe harbor by complying with the damage disclosure law. (See *BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559, 569–570 [134 L.Ed.2d 809, 116 S.Ct. 1589].) The purpose of providing this safe harbor is to allow a dealer such as appellant, in the proper factual situation, to do exactly what it did in this case: repair minor damage and still lawfully be entitled to treat the car as new. This statutory purpose would be undermined if repairs that qualify for the safe harbor also triggered the CLRA to punish the dealer who represents the car as new. (See *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 828 [135 Cal.Rptr.2d 1, 69 P.3d 927] [practices expressly permitted by the Legislature provide a safe harbor from liability under unfair competition law].)

E.  *Whether Repaired Damage Meets the Statutory Materiality Threshold Is a Question of Fact in This Case*

■  In the present case, appellant claimed the repaired damage to the Hummer prior to the sale to respondent amounted to only approximately

---

[6] Section 665 defines a "used" vehicle as one that (1) has been sold, (2) has been registered with the Department of Motor Vehicles, (3) has been sold and operated upon the highways, (4) has been registered with an appropriate governmental agency or authority, (5) is unregistered but is regularly used or operated as a demonstrator in the sales work of a dealer, or (6) is unregistered but is regularly used or operated in the sales or distribution work of a manufacturer. In this case, there was no evidence the Hummer qualified as a "used" vehicle under section 665 prior to its sale to respondent.

Additionally, section 11713.7 requires disclosure to a buyer that a vehicle has been remanufactured. However, section 507.5 defines "remanufactured vehicle" to specifically *exclude* any vehicle "incidentally repaired, restored, or modified by replacing or adding parts or accessories."

1.3245 percent of the Hummer's MSRP. This amount was well within the 3 percent safe harbor provided by the damage disclosure law for new vehicles. If repaired damage in fact was less than 3 percent, there would be no obligation for appellant to affirmatively advise respondent of repaired damage under section 9991 in the absence of a specific inquiry. Absent such a duty to disclose, there would be no breach of the CLRA by appellant.

Whether damage to the Hummer met the statutory materiality threshold presented a question of fact under the particular circumstances of this case. It was for the trier of fact to determine whether the repairs actually restored the car to its predamaged condition, whether replacement parts and equipment used were original manufacturer's, and the true "repairer's" costs.

### 3. *The Trial Court Correctly Denied Summary Judgment*

In the instant case, in moving for summary judgment, appellant contended there was no triable issue of fact that any damage to the Hummer was repaired prior to sale and that the cost of repairs, calculated pursuant to section 9990, did not exceed 3 percent of the MSRP of the Hummer. Appellant contended there accordingly was no "material" damage requiring disclosure under section 9991. Appellant provided evidence, including a declaration by its director of operations, in support of its motion. In opposition, respondent proffered the declaration of an expert and other evidence indicating the claimed repairs to the Hummer were incomplete and deficient.

We review the grant or denial of summary judgment de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116]; *Nakamura v. Superior Court* (2000) 83 Cal.App.4th 825, 832 [100 Cal.Rptr.2d 97].) We apply the same analysis as the trial court. When the moving party is a defendant, we first identify the issues framed by the pleadings; next, we determine whether the defendant has shown the plaintiff has not established, and cannot reasonably expect to establish, a prima facie case; if so, we determine whether the plaintiff has demonstrated the existence of a triable, material issue of fact as to the cause or causes of action at issue. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274 [42 Cal.Rptr.3d 2, 132 P.3d 211]; *Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].) Summary judgment is appropriate when no triable issue of material fact exists and the defendant is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Merrill v. Navegar, Inc., supra,* at p. 476.)

Construing the evidence in the light most favorable to the responding party, as we must (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493]), respondent raised triable issues of fact

regarding the sufficiency and reasonableness of the repairs. The trial court therefore properly denied appellant's motion for summary judgment.

## 4. *The Judgment Must Be Reversed Because of Instructional Error*

Notwithstanding the motion for summary judgment was properly denied, the judgment must be reversed because the court improperly instructed the jury regarding the safe harbor defense at trial.

### A. *Appellant Adequately Raised the Issue on Appeal*

Initially, we address whether appellant has waived on appeal any claim that the jury was improperly instructed. Appellant failed to assert instructional error in its opening or reply briefs. We invited the parties to state their views on whether the trial court committed error when it instructed the jury it could consider the safe harbor provisions of the Vehicle Code only with reference to punitive damages claimed in the action and, if so, whether such error was prejudicial to appellant. We also informed the parties and amicus curiae that we proposed to take judicial notice of the underlying superior court file in the matter. We have reviewed the supplemental briefs filed by the parties and amicus curiae in response to our invitation.

Not surprisingly, appellant argued in its supplemental brief that the trial court committed prejudicial error in refusing to properly instruct the jury that the Vehicle Code provides a safe harbor against liability. Respondent objects that we may not construct new legal theories or arguments not raised by appellant to undermine the judgment, nor may we consider portions of the superior court file not designated by appellant. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [57 Cal.Rptr.3d 363] ["It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness."].)

We take note, however, that " '[t]he rule requiring an adequate legal argument . . . is largely for the convenience of the reviewing court. And, since the court may decide a case on any proper points or theories, whether urged by counsel or not, there is no reason why it cannot examine the record, do its own research on the law, or accept a belated presentation.' [Citation.]" (*Banco Do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d 973, 999, fn. 41 [285 Cal.Rptr. 870]; see 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 702, pp. 771–772.)

It would be unjust to close our eyes to patent error. As our former colleague in Division Seven observed, appellate courts are not " 'potted plant[s]' unable to consider issues unless they are spoon fed by the parties."

(*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1031 [120 Cal.Rptr.2d 281] (dis. opn. of Johnson, Acting P. J.); see also *People v. Alice* (2007) 41 Cal.4th 668, 679 [61 Cal.Rptr.3d 648, 161 P.3d 163] [appellate court may decide issue not raised or briefed by parties if court affords parties opportunity to address issue in supplemental briefs].)

We hold, therefore, that the issue of instructional error has been sufficiently raised and preserved by appellant's argument on appeal that the trial court erred in denying the motion for summary judgment.

B. *The Trial Court Erroneously Limited the Safe Harbor Defense*

██ A party is entitled to an instruction on its theory of the case when its theory is supported by substantial evidence. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 [34 Cal.Rptr.2d 607, 882 P.2d 298] (*Soule*).) In reviewing issues relating to the failure to give a requested jury instruction, and the prejudicial impact of such failure, we must view the evidence in the light most favorable to the losing party; we must assume the jury might have believed the evidence upon which the proposed instruction was predicated and might have rendered a verdict in favor of the losing party had a proper instruction been given. (*Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 674 [117 Cal.Rptr. 1, 527 P.2d 353]; *Baumgardner v. Yusuf* (2006) 144 Cal.App.4th 1381, 1388 [51 Cal.Rptr.3d 277]; *Freeze v. Lost Isle Partners* (2002) 96 Cal.App.4th 45, 53 [116 Cal.Rptr.2d 520]; *Logacz v. Limansky* (1999) 71 Cal.App.4th 1149, 1157 [84 Cal.Rptr.2d 257]; *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 419 [72 Cal.Rptr.2d 720].)

In the trial court, appellant consistently sought to assert the safe harbor defense and have the jury properly instructed on that issue. As discussed, appellant unsuccessfully moved for summary judgment on the issue before trial. The superior court file, which we have examined, also indicates that, before trial and over appellant's objection, the trial court granted respondent's motion in limine to exclude any evidence, argument or comment that compliance with sections 9990 and 9991 provided a defense to the CLRA claim. Appellant proffered jury instructions consistent with a safe harbor defense, which the trial court essentially rejected, as discussed, *post*. The trial court also prohibited appellant's counsel from referring to the safe harbor defense in his opening statement.

As we have explained above, the safe harbor provisions of the Vehicle Code apply to claims asserted under the CLRA. At trial, the court instructed the jury that appellant "was required to obey the [CLRA] when selling the Hummer to [respondent] *regardless of the Vehicle Code Section*." (Italics

added.) The jury was instructed regarding the safe harbor provisions, but the court expressly instructed that it could consider the defense only with reference to punitive damages. The court told the jury, "You must not consider any information regarding this Vehicle Code Section, except for the limited purpose of determining whether [appellant's] conduct justifies the award of punitive damages."[7]

Appellant interposed two affirmative defenses to respondent's complaint based on the safe harbor provisions of the Vehicle Code. Yet the court refused to instruct the jury it could consider such safe harbor provisions as a defense to liability. For the reasons discussed above, the trial court erred in precluding appellant from invoking the safe harbor defense against liability at trial. The error was compounded by the court's further instruction to the jury that liability could be found if appellant simply concealed an "important" fact, without regard to the definition of "material" fact set forth in section 9990. This allowed the jury to find for respondent regardless of the safe harbor provisions defining materiality and setting minimum thresholds for liability.

## C. *The Limitation of the Safe Harbor Instruction Prejudiced Appellant*

A judgment may not be reversed on the basis of instructional error, however, unless the error caused a miscarriage of justice. (*Soule, supra,* 8 Cal.4th at p. 573.) "When the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached. [Citation.]" (*Id.* at p. 574.) In the present case, the trial court specifically instructed the jury that the Vehicle Code should *not* be considered in any manner, except for purposes of determining if punitive damages were justified. These instructions were clearly erroneous and deprived appellant and the jury of an important tool created by the Legislature in determining the legal obligations of a dealer selling a vehicle with minor repaired damage.

A correct instruction would have allowed the jury to consider whether appellant's conduct fell within the safe harbor provisions, a clearly contested fact with each side presenting conflicting evidence. Had the jury been allowed to consider the safe harbor defense as to liability, the jury could well have concluded appellant had no liability because any unrepaired damage to the vehicle was insubstantial and not required to be disclosed. At the very least, whether the damage was material and was required to be disclosed should have been a question for the jury to decide.

---

[7] The court told counsel, "I think [appellant's] good faith reliance on [the] Vehicle Code does go to the determination on their *intent* to defraud." (Italics added.)

The error clearly prejudiced appellant. The jury found a violation of the CLRA, but it failed to award any damages for such violation. The jury also found in favor of appellant on punitive damages, the only issue to which the court allowed the jury to apply the safe harbor provisions. The jury's determination that no punitive damages should be assessed against appellant is consistent with a finding that the safe harbor provisions applied under the facts at issue. Moreover, during deliberations the jury asked the court whether the Vehicle Code could be used as a guide for determining the significance of repaired damage.[8] The jury's inquiry suggests the jurors might well have found no disclosure was necessary under the safe harbor provisions had they been instructed properly on the law.

It is evident that appellant anticipated litigating a safe harbor defense after its summary judgment motion was denied. The trial court's ruling suggested that triable issues of fact existed respecting the defense, such as whether the quality of the repair work was so poor that the damage could not be deemed repaired within the meaning of the Vehicle Code or whether the repairs were actually below the materiality threshold of the Vehicle Code. Instead, by means of the limiting jury instructions, the trial court erroneously eliminated the safe harbor defense, with the inexplicable exception of punitive damages. The constraint on the jury's consideration of the case and the abrupt change in the scope of the issues to be determined at trial severely prejudiced appellant and clearly require that the judgment be reversed, except as noted below.[9]

## DISPOSITION

The finding of liability and award of damages, costs, prejudgment interest and attorney fees must be reversed. However, the jury found punitive

---

[8] The jury's note inquired: "Is there a legal definition of 'important fact'? If so, what is it? Can we use the [V]ehicle [C]ode as a guide[?]" The court responded, " 'Important fact' is defined in the instructions. See the top of page 17. *Do not use the [V]ehicle [C]ode as a guide.*" (Italics added.) Page 17 of the instructions told the jury that "[a] fact is important if it would influence a reasonable person's judgment or conduct. A fact is also important if the person who makes it knows that the person to whom the representation is made is likely to be influenced by it even if a reasonable person would not." By using a definition for "important fact" that was not the definition the Legislature created and that has a substantially lower threshold for liability, the court misled the jury and effectively prevented it from considering appellant's sole defense.

[9] Respondent argues that appellant failed to address the false advertising claim, which respondent claims was tried to the court. Respondent points to no evidence in the record establishing that the trial court found in his favor on the false advertising claim or granted him equitable relief under Business and Professions Code section 17200 et seq. Appellant correctly notes that the only equitable relief the court granted was rescission of the transaction, the relief sought in respondent's causes of action for concealment, violation of the CLRA and unjust enrichment. The false advertising claim was never adjudicated. We thus need not address respondent's contention that appellant's failure to address the false advertising claim dooms this appeal.

damages were not warranted, and we find substantial evidence in the record to support this determination. Accordingly, the judgment in favor of appellant with respect to punitive damages is affirmed. The judgment in favor of respondent and the order granting costs, prejudgment interest and attorney fees are reversed, and the matter is remanded to the trial court for retrial in conformance with this opinion.

Appellant is to recover costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

A petition for a rehearing was denied October 23, 2008, and the opinion was modified to read as printed above.