Filed 6/30/16  Petikyan v. Elk St. Properties CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SUSANA PETIKYAN et al.,<br><br>     Plaintiffs and Appellants,<br><br>     v.<br><br>ELK ST. PROPERTIES et al.,<br><br>     Defendants and Respondents. | B262529<br><br>(Los Angeles County<br>Super. Ct. No. BC515735) |

        APPEAL from a judgment of the Superior Court of Los Angeles County. Graciela Freixes, Judge.  Affirmed.

        Law Offices of Mann & Elias, Scott Mann and Richard Scott Houtz, for Plaintiffs and Appellants.

        Belofsky & Hanker, David A. Belofsky, for Defendants and Respondents.

* * * * * *

A woman scalded by hot water from a showerhead in her mother's apartment sued the apartment complex and its owner for negligently setting the complex's water heater at too high a temperature; the mother sued for negligent infliction of emotional distress. A jury concluded there was no negligence. On appeal, the woman and her mother argue that the trial court erred in limiting their expert's testimony and in not instructing the jury on a landlord's duty to inspect. We conclude there was no error and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

In July 2013, Susana Petikyan (Susana) was scalded with hot water in the shower/tub of the apartment rented by her mother, Zina Petikyan (Zina).[1] Although, at the time of the incident, the cold water valve in the shower/tub and the diverter that directs water either to the tub spout or the showerhead were working properly, Susana stepped into the shower and turned on just the hot water without checking where the water was directed; it came out of the showerhead, hot, and scalded her within 15 seconds.

The apartment Zina rented was part of a 13-apartment complex owned by Elk St. Properties, which was in turn owned by David and Behnaz Karlin. The complex had a single water heater. The water heater had been professionally installed eight to ten years prior to the incident. That heater had a minimum temperature of 120 degrees Fahrenheit, and the plumber who installed the heater set the temperature above that minimum; neither the owners nor their apartment manager subsequently changed the water heater's temperature setting. During the intervening eight to 10 years, no one complained to the owners or apartment manager that the water coming from the showerheads was too hot.

Although water at temperatures above 120 degrees Fahrenheit can cause scalding, water must be over 120 degrees Fahrenheit for use in dishwashers and other household appliances that disinfect. Although California law was amended in 1988 to require new

---

[1]     We use first names for clarity; we mean no disrespect.

buildings to install temperature limiting valves onto each bathroom faucet or spout, that amendment did not apply to buildings, such as the apartment here, built in the 1960's.

The temperature of the water that scalded Susana is unclear. One expert measured the water from that showerhead at between 124 and 127 degrees Fahrenheit, but opined that it may have been between 130 and 140 degrees Fahrenheit at the time of the incident based on the time Susana was exposed to the water and the extent of her burns. Another expert measured the water from the showerhead at 120 degrees Fahrenheit.

## II.     Procedural Background

In the operative first amended complaint, Susana and Zina (collectively, plaintiffs) sued Elk St. Properties and David Karlin (collectively, defendants) for (1) negligence, based on premises liability, (2) negligence, and (3) negligent infliction of emotional distress.

A jury returned a verdict finding that defendants were not negligent.

After judgment was entered, plaintiffs filed this timely appeal.

## DISCUSSION

## I.     Limitation of Expert Testimony

Plaintiffs retained an expert witness, and the trial court permitted the expert to opine on the temperature of the water at the time of the accident, the proper temperature at which a water heater should be set, and the availability of temperature limiting valves to avoid scalding. The court did not permit the expert to offer the opinions that apartment managers are subject to a "standard of care" that obligates them to "know the maximum temperature at which [a] hot water heater should be set" and to "periodically check[] that [the water heater is] operating properly." The court cited two reasons: (1) the expert was a "civil engineer" who lacked special expertise in "commercial apartment management"; and (2) the expert's testimony rested on the incorrect legal premise that apartment managers are subject to a specialized "standard of care" aside from general negligence principles. Plaintiffs attack the court's limitation of their expert's testimony.

Before a person may offer expert testimony, a trial court must conclude that (1) his proffered opinion is "[r]elated to a subject that is sufficiently beyond common experience

3

that the opinion of an expert would assist the trier of fact" (Evid. Code, § 801, subd. (a)), (2) that opinion is "[b]ased on matter . . . perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion" (*id.*, subd. (b)), and (3) the person is "qualified to testify as an expert [because] he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates" (Evid. Code, § 720, subd. (a)). We review a trial court's rulings on any of these threshold matters for an abuse of discretion. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

We conclude that the court acted within its discretion in limiting the testimony of plaintiffs' expert. To begin, there is no special "standard of care" that applies to apartment managers generally or with respect to water heaters specifically. Although professionals such as lawyers, doctors and the like may be held to a special standard of care that must in most cases be explained by expert witnesses (*Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001), for the rest, "courts have fixed no standard of care for tort liability more precise than that of a reasonably prudent person under like circumstances" (*Ramirez v. Plough, Inc.* (1993) 6 Cal.4th 539, 546; accord, *Peterson v. Superior Court* (1995) 10 Cal.4th 1185, 1196 [for landlords, test is whether "he has acted as a reasonable man"]). Plaintiffs have presented no authority to the contrary.

Even if such a standard did exist, the court acted within its discretion in concluding that plaintiffs' expert was not qualified to offer an opinion on that standard. The expert was a licensed civil engineer who owned a company that offered "safety engineering services" that (1) evaluated property for safety hazards and compliance with building codes, (2) helped property owners "develop[] safety plans to prevent accidents," and (3) conducted forensic analyses of past accidents. The expert was a member of the Construction Division and Risk Management/Insurance Division of the American Society of Safety Engineers as well as the California Apartment Association and Apartment

4

Owner's Association of America. He had never owned an apartment complex and did not belong to the American Society of Heating, Refrigeration and Air Conditioning Engineers. When questioned during his deposition about the basis for his experience and training on the standard of care that applied to apartment managers, the expert said that his company trains property managers to identify and eliminate safety risks, that the owner's manual for the water heater has warnings, and that he has attended seminars and read handbooks regarding hot water delivery systems. Critically, the expert's answer did not explain *why* he had special expertise as to whether apartment managers had a special standard of care. The court specifically relied on the expert's inability to provide a satisfactory answer to this question, and the court's limitation of his testimony on this ground was not an abuse of discretion.

Plaintiffs raise two further arguments. First, they assert that the court erred in insisting that their expert have personal knowledge of how to run an apartment building. This was not the basis for the court's ruling. More to the point, what the expert lacked was *any* expertise on the standard applicable to apartment managers, by personal knowledge or otherwise. Second, and as a procedural matter, plaintiffs seem to suggest that the court erred in not giving them an evidentiary hearing on the expert's qualifications. Plaintiffs never requested one, and their failure forfeits that issue. (*People v. Lazarus* (2015) 238 Cal.App.4th 734, 786-787.)

## II. Jury Instruction on the Failure to Inspect

The court instructed the jury on the elements of premises liability (CACI No. 1000), on a property owner's basic duty of care "to discover any unsafe conditions and to repair, replace, or give adequate warning of anything that could be reasonably expected to harm others" (CACI No. 1001), on the general definition of negligence (CACI No. 401), and on a property owner's duty to discover a condition on the property that creates an unreasonable risk of harm (CACI No. 1003).

Plaintiffs also asked the court to give CACI No. 1011, which spells out a property owner's duty to discover unsafe conditions and to "make reasonable inspections of the

property to discover unsafe conditions."[2]  The court declined, concluding that the instruction did not apply to "the facts of this case" because (1) the evidence did not "establish[] that there was an unsafe condition," and (2) defendants never received any complaints that there was "a problem with the water delivery system."  Plaintiffs argue that the court erred in declining to give CACI No. 1011.

We review jury instructions de novo.  (*Romine v. Johnson Controls, Inc.* (2014) 224 Cal.App.4th 990, 1000.)  A trial court must give any legally "correct, non-argumentative jury instruction[] . . . that is supported by substantial evidence." (*Maureen K. v. Tuschka* (2013) 215 Cal.App.4th 519, 526.)  In assessing whether substantial evidence exists, we view the evidence in the light most favorable to the party requesting the instruction.  (*Bourgi v. West Covina Motors, Inc.* (2008) 166 Cal.App.4th 1649, 1664.)

We conclude the court properly declined to instruct the jury on the duty to discover unsafe conditions and the duty to inspect.  We agree with plaintiffs that the alleged "unsafe condition" was the fact that the water temperature in the apartment's water delivery system was too high, and that prior actual notice of an unsafe condition is not a prerequisite to constructive knowledge of that condition.  (See, e.g., *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1206-1207; *Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128, 1134.)  But the court correctly declined to give CACI No. 1011 because plaintiffs introduced no evidence regarding a landlord's special duty of care to discover water temperatures above 120 degrees Fahrenheit or its duty to make periodic inspections of the water temperature in an apartment complex's water delivery system.

---

2       In full, CACI No. 1011 provides:  "In determining whether [defendant] should have known of the condition that created the risk of harm, you must decide whether, under all the circumstances, the condition was of such a nature and existed long enough that [defendant] had sufficient time to discover it and, using reasonable care:  (1) [r]epair the condition; or (2) [p]rotect against harm from the condition; or (3) [a]dequately warn of the condition.  [Defendant] must make reasonable inspections of the property to discover unsafe conditions.  If an inspection was not made within a reasonable time before the accident, this may show that the condition existed long enough so that [the landowner] using reasonable care would have discovered it."

Plaintiffs' proffered expert testimony was, as explained above, properly excluded. There was testimony that the owner's manual for the water heater said it should be inspected annually to ensure that it was in working condition, but that speaks to making sure the water heater is not broken, not to checking the temperature at which a properly functioning water heater is set.

The omission of CACI No. 1011, even if erroneous, is not grounds for upsetting the jury's verdict because its absence did not "'prejudicially affect[] the verdict.'" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580, quoting *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.) In assessing prejudice, we look to "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled." (*Soule*, at pp. 580-581.) Setting aside for the moment the fact that fixing the water heater temperature above 120 degrees Fahrenheit may not have been an "unsafe condition" at all (given the need for temperatures to sometimes be far in excess of that temperature), the other instructions cured any error. Specifically, the jury was instructed that a property owner has a basic duty to "discover any unsafe conditions and to repair, replace" or warn of those conditions. These instructions more than sufficiently encompassed plaintiffs' theory of the case—namely, that defendants were negligent in not discovering that the water in their pipes was over 120 degrees Fahrenheit, and in not either reducing that temperature or warning their tenants not to step into a shower with just the hot water.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
ASHMANN-GERST

7