**ARTHUR SANDY HARK, Plaintiff**
**v.**
**ANTILLES AIRBOATS, INC., Defendant**

Civil No. 476-1972

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 7, 1973

395

ISHERWOOD & COLIANNI, ESQS., Christiansted, St. Croix, V.I., *for plaintiff*

BAILEY, WOOD & ROSENBERG, ESQS., St. Thomas, V.I., *for defendant*

YOUNG, *Judge*

### MEMORANDUM OPINION AND ORDER

The question raised by defendant's motion for judgment on the pleadings and/or summary judgment is whether the bailiff shall place the Silver Oar of the Admiralty on the bench. My answer is that the oar should

be placed on the bench[1] and that this matter will proceed as an action in admiralty and not as a case in the common law court.

In February of 1970, plaintiff, Arthur Hark, purchased a ticket for a flight from Charlotte Amalie, St. Thomas to Christiansted, St. Croix. The flight was to be made on a Grumman Goose, an amphibian plane operated by defendant Antilles Airboats, Inc. (hereinafter referred to as "Antilles"). Seconds after takeoff and before the pilot achieved VMC (minimum control speed), the plane lost power on one of its two engines and ditched in the harbor waters. The plane flipped over. The pilot and all passengers were rescued without loss of life. However, Hark brought this action to recover for injuries allegedly sustained.

██ His task was complicated by the expiration of the statute of limitations on a common law tort action. Perhaps with this difficulty in mind, Hark framed his principal claim for relief as an action in admiralty. Such an action would be governed by the doctrine of laches rather than by an inexorable period of statutory limitation. Hark also relies on two further theories of recovery —breach of a warranty of airworthiness, and breach of a contract for safe carriage—which both would involve statutes of limitation sufficiently long for his purposes. With matters in this posture Antilles has moved to dismiss the complaint. Antilles urges that the underlying claim is preeminently for an aviation accident, and that the first count

---

[1] When the English Admiralty was finally merged into the Supreme Court of Judicature in England in 1873, it became one of several divisions, to wit, the Probate, Divorce and Admiralty Division. Each Division of the High Court was granted the same jurisdiction so that any judge might hear any case or transfer it to another Division. The result of this led to confusion when the Judge switched from, say, divorce to admiralty, and this, I am advised, led to the establishment of the custom of placing a "Silver Oar of the Admiralty" on or near the bench, indicating to all that drew nigh that his honor was sitting in a matter involving maritime and admiralty jurisdiction. There is such an oar in the District Court of the Virgin Islands, but it is made out of oak and not silver.

397

therefore cannot properly be brought in admiralty. This contention is by no means insubstantial. I hold, however, that an amphibious airplane crash can support an action for a maritime tort, at least where the plane has not fully completed the takeoff phase of its flight and been brought under control as an airborne vehicle. Antilles also urges that the remaining counts in warranty and contract are inappropriate for what is basically a tort claim, with which I agree. The complaint will therefore be dismissed as to those two causes of action, but sustained as to the tort claim in admiralty.

I

■ The principal question is whether admiralty jurisdiction is appropriate when an aircraft suffers an accident in navigable waters. The law on this question is still unsettled and only the extreme cases are clear. When a seaplane is floating on the water it is for practical purposes a vessel. It is then subject to the ordinary rules of navigation, see, e.g., 33 U.S.C. § 144(a), and cases involving the craft in this state have consistently been heard in admiralty. See, e.g., United States v. Northwest Air Service, 80 F.2d 804 (9th Cir. 1935) (dictum); Reinhardt v. Newport Flying Service Corp., 133 N.E. 371, 18 A.L.R. 1324 (N.Y. 1921) (Cardozo, J.) (exclusive admiralty jurisdiction for employment-connected injuries). On the other hand, when a land-based plane is disabled during a primarily overland flight, the happenstance of its eventually crashing in navigable waters will not support admiralty jurisdiction. See, e.g., Executive Jet Aviation, Inc. v. City of Cleveland, — U.S. —, 41 U.S.L.W. 4085 (Dec. 18, 1972); The Crawford Bros. No. 2, 215 F. 269 (W.D. Wash. 1914). Even a seaplane may be outside the admiralty sphere if the cause of action is sufficiently re-

moved from its role as a marine vehicle. See United States v. Northwest Air Service, 80 F.2d 804 (9th Cir. 1935) (maritime lien inappropriate where seaplane stored in hangar on dry land, with its engine in a shop, also on dry land, undergoing repairs).

■■ The present case, as if guided by a malign intelligence, falls precisely in the uncertain middle ground. The seaplane had left the water and reached an altitude of some two hundred feet, but it had not yet completed its takeoff and attained sufficient speed and altitude to be controllable in the event of an engine failure. At least the principles for my decision, however, have been established. This matter must be decided in light of Executive Jet Aviation, Inc. v. City of Cleveland, 41 U.S.L.W. 4085 (U.S. Dec. 18, 1972), the Supreme Court's most recent and comprehensive pronouncement on the subject. The Court there overturned a long line of cases holding that a tort was "maritime," and hence within admiralty jurisdiction, if it met the single test of location on navigable waters. See, e.g., The Plymouth, 70 U.S. (3 Wall.) 20, 35–36 (1866); Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3rd Cir. 1963) (land-plane crash in Boston harbor). The Court held that a further test should be satisfied. In addition to a maritime location, the tort must also have "a significant relationship to traditional maritime activity." 41 U.S.L.W. 4085, 4091. The reason for this proviso is evident. The maintenance of a separate body of admiralty law is justified by its developed expertise in maritime matters; this law should be invoked only when its expertise is relevant, and not for mere locational fortuities which would bring before it matters outside its sphere of competence.[2]

---

[2] The admiralty jurisdiction is not defined by statute, which simply refers to "any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). Thus, at the time when the "location" test alone governed jurisdiction, one might have distinguished some of the cases dismissing ad-

For three reasons, however, I believe that this seaplane crash has a proper claim on the admiralty side of the court.[3] First, the problems of taking off and landing a seaplane differ from those encountered with conventional aircraft, and are instead influenced by the "marine" nature of the runway used. Secondly, where the flight is over international waters, as it was to be here, there are especial conveniences in using an admiralty forum. And finally, it seems desirable to treat ship and aircraft accidents in the same manner, insofar as possible.

█ Seaplane takeoffs and landings differ in important respects from those of conventional aircraft. It is therefore desirable to have a specialized body of law and procedures to draw upon, in the event that a mishap from this phase of the operations reaches the courts. Since many of the special considerations are maritime in nature, the admiralty division is the most obvious place to locate this special expertise. To take one example, on takeoff and landing runs, the plane is subject to the Rules of the Road and any collision would be determined accordingly. The "marine" character of the venture also persists for some distance after the plane has left the water and is no

miralty actions with respect to seaplanes. Such cases were not usually based on lack of jurisdiction, but instead held that a seaplane, in the particular context, was not a "vessel" within the meaning of a substantive admiralty statute. See, e.g., Northwest Air Service, The Crawford Bros. No. 2, supra. But now that the "maritime connection" test is also used, the factors to be considered are much the same as those used to determine whether the seaplane was in its role as a "vessel" at the time. These cases have therefore acquired some precedential value on the jurisdictional question as well.

[3] Even without these reasons "on the merits," I would then hold that Executive Jet should be given only prospective effect to reach causes of action which accrued after the date of that decision. The case overturned settled law to the contrary in this Circuit, Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3rd Cir.), cert. denied, 375 U.S. 940 (1963). Retroactive application might then penalize reliance on the former rule that admiralty jurisdiction, with its longer period of limitations, would be appropriate. In such circumstances prospectivity is frequently used. See Chevron Oil Co. v. Huson, 404 U.S. 97 (1971); McSparran v. Weist, 402 F.2d 867 (3rd Cir. 1968) (en banc).

longer under the formal navigational rules. For instance, the plane may have to turn shortly after takeoff without proper maneuvering speed to avoid large ships anchored in a pattern determined by the harbormaster. The takeoff or landing waters may be fraught with flotsam or ligan or just plain pollution and erratic boaters and snorkelers—all posing maritime dangers, not at all common to land based planes. Prolonged periods of full-throttle power, needed to break the hull suction on takeoff, are inducive to further dangers, including engine failures. Peripheral topographical considerations are also different with seaplanes. Since the plane needs sheltered waters for takeoffs and landings, it is usually flown from and into harbors or bays. But the feature which makes a sheltered harbor or bay often make. a treacherous seaplane aerodrome. The enclosing hills may dictate a sinuous flight with no conventional patterns for takeoff and approach, and may funnel the winds with unexpected force in turbulent streams. For these reasons, I hold that a seaplane flight retains a distinct "marine" character at least until the plane is safely airborne. By "airborne" I do not mean the plane has merely left the water, but rather that it has left the reach of the special maritime hazards discussed above. This would be when the plane has found its way out of the harbor basin, reached an altitude sufficient to clear all surface shipping, and attained a speed sufficient to maintain altitude and directional control in the event of a critical engine failure. I believe that before then the seaplane is still in the takeoff phase of its flight, which must be considered maritime.[4]

---

[4] An adventurer on a Goose flight in the Virgin Islands will say it's maritime for sure. Whether he or she occupies one of the thwartship bucket seats or is seat-belted to the fore-and-aft bench, there is a wet, submerged feeling at the initial takeoff thrust of full power. The feeling—and the craft—then emerge to a frantic hydrofoil run midst buoys and boats; then, after a few good parting wave spanks on the hull, the Goose lifts off into the air as only a "Jonathan Livingston Seagull" can do.

Alternatively, I will also ground admiralty jurisdiction on a somewhat broader holding. The flight in this case was to be from St. Thomas to St. Croix. Although not international, it was to be over international high seas' waters. During most of the flight, therefore, the plane would be beyond the territorial jurisdiction of the Virgin Islands. It would therefore seem most convenient to refer to the nationally-uniform admiralty laws to cover all phases of such a flight. Moreover, a mishap on the high seas may involve foreign nationals in the controversy, in which case a federal forum would be more appropriate than a local one. See 7A Moore, Federal Practice, Admiralty ¶ .330(5). The Supreme Court left this possibility open in Executive Jet, by restricting its holding to "flights by land-based aircraft between points within the continental United States." 41 U.S.L.W. at 4092. In the Executive Jet opinion (pp. 22 and 23, preliminary draft), Mr. Justice Stewart considered the possible maritime nature of a New York to London flight crashing into mid-Atlantic. He commented that "[a]n aircraft in that situation might be thought to bear a significant relationship to traditional maritime activities because it would be performing a function traditionally performed by waterborne vessels." In this Virgin Islands case, it was not too long ago that the M/V "Mary" carried the mail and passengers between St. Thomas and St. Croix. The Goose is now replacing, but not entirely, the "Mary" and other small motor vessels and schooners transporting freight, mail and passengers between the islands. And, as Mr. Justice Stewart went on further to say: "Moreover, other factors might come into play in the area of international air commerce—choice of forum problems, choice of law problems, international law problems, problems involving multi-national conventions and treaties, and so on." For the reasons given ear-

lier in this paragraph, I will therefore alternatively hold that Executive Jet does not limit admiralty jurisdiction for flights over international waters, at least where such flights are made by seaplanes or amphibian airplanes between territorial islands.[5]

A final policy consideration helps to support both of these holdings. I believe that, ideally, cases of aircraft and marine accidents should receive similar treatment in the courts. Congress, of course, has not enacted general legislation to this effect and it is not for me to do so. Nonetheless, this desideratum will help justify extending the admiralty jurisdiction to aircraft operations which may otherwise be fairly said to come within it. My reasons for approving of this policy are twofold. Generally speaking, both aviation and marine law deal with complex mechanisms, and the legal terminology for analyzing this machinery is sufficiently similar that the two bodies of law may be compared with profit. For example, "airworthiness" and "seaworthiness" are not dissimilar; and the Rules of the Road and the doctrine of the "last clear chance" are also akin in the two contexts. The second reason is more narrow and in point for the present case. I believe that aviation torts ought to have the benefit of the relatively flexible doctrine of laches, and ought not to be confined within a brief and unyielding statute of limitations. An aircraft crash is far more complicated than the ordinary tort and it is more like a marine accident in that it is followed by a lengthy official inquiry. A litigant may wish to await the results of this investigation and should, I think, be permitted to do so.

---

[5] There might appear a gap which would still be covered by local law, after the plane has completed its takeoff but before it reaches international waters. However, if my holding as to "high seas" flight is accepted, then in the interests of simplicity such a flight should come within the admiralty jurisdiction in its entirety.

## II

■■■■■ In addition to the maritime tort, Hark has also charged breach of an implied warranty of airworthiness. This count was not seriously pressed in oral argument and I believe it must be dismissed. Warranty actions relate to the quality of manufacture, as of an aircraft, and hence should be brought against the original producer or its distributors.[6] They are not a substitute for the ordinary actions in tort and contract, which allege that a purchaser of the plane has operated it negligently or failed to provide carriage upon the stipulated terms. Accordingly, it has been generally held that a breach of warranty action may not be maintained against an airline. See L. Kreindler, 1 Aviation Accident Law § 3.03 (1971 Supp. 1972).

## III

■■■■■ Even without the warranty count, however, Hark seeks to attain the same result by alleging breach of contract as his third cause of action.[7] Hark urges that his ticket contains an implicit contractual guarantee of safe carriage, and so, I assume, he hopes to recover on a theory of automatic liability once he demonstrates that he was not delivered safely to St. Croix. Doctrinally, however, the general and preferable view is that even a common carrier must be proven negligent before it is liable. See, e.g., Marsh v. Southern Airways, Inc., 316 F.2d 91 (5th Cir. 1963); Maynard v. Eastern Airlines, Inc., 178

---

[6] While Hark might join Grumman as a defendant, the plane may have been out of the manufacturer's hands for too many years to permit a mechanical defect to be attributed to him.

[7] The claim for breach of contract is not actually spelled out in the complaint. It is nonetheless implicit in the allegations under the caption of "warranty," and I will treat this count as if it had been raised explicitly. In any event Hark still appears entitled to amend his complaint. See Fed. R. Civ. Proc. 15(a).

F.2d 139 (2nd Cir. 1949); Vandevoir v. Southeastern Greyhound Lines, Inc., 152 F.2d 150 (7th Cir. 1945); 8 Am.Jur.2d Aviation § 67. The Third Circuit cases of Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3rd Cir. 1963) and Scott v. Eastern Airlines, Inc., 399 F.2d 14 (3rd Cir. 1967) (en banc) are not to the contrary. Weinstein is best understood as holding that any contract claim must be determined in a state court rather than in admiralty,[8] but not as expressing any opinion as to the likelihood of recovery in that forum. In Scott only the two plurality judges unequivocally indicated that contract recovery would be appropriate, while the remaining five judges were silent on the point. As a practical matter, of course, the instrumentalities of a common carrier are generally within the operator's exclusive control, and a strong inference of negligence may arise from the mere fact of an accident. This inference should nonetheless be marshalled in favor of a tort action. Personal injury is preeminently a tort claim, and if such actions were allowed to be brought in contract there would be several harmful consequences. The defenses of due care and Act of God would be eliminated, and so would the legislature's two-year statute of limitations. Indeed, a judge might then encounter the argument that an ordinary automobile tort could be brought within a six-year period, since acceptance of a driver's license creates a third-party beneficiary contract, in favor of all other users of the road, that the holder will drive carefully.

---

[8] A contract, as opposed to a tort, is cognizable in admiralty only if the subject matter of the contract, as a whole, relates to maritime transactions. 316 F.2d at 766. Since I have held that a seaplane flight over international waters is maritime, the contractual count here is being considered as an admiralty claim. Even if I were mistaken in that holding, however, there would be no difference in the result here. The contract claim would then come under local law and be before me in my capacity as a Territorial judge. I would then, for convenience, have consolidated the two actions.

## IV

With Hark's claims thus reduced to the single count of maritime tort, Antilles has sought to bar this last count by raising the defense of laches. Although I will hold that laches does not exist on the facts of the present case, Antilles' claim is by no means trivial. Admiralty courts rely on the concept of "unreasonable delay" rather than on a definite period of limitation, but as a matter of convenience they look to the analogous local statute of limitations to determine what a reasonable delay would be. This practice of "borrowing" not only produces a suitable time figure, but it also prevents forum-shopping vis-a-vis the local courts where a personal injury action could also have been brought. See Morales v. Moore-McCormack Lines, Inc., 208 F.2d 218 (5th Cir. 1953); McGrath v. Panama R. Co., 298 F. 303 (5th Cir. 1924).

Nonetheless, as we have seen, admiralty often deals with more complex accidents than the ordinary tort. A somewhat longer time period may become desirable for this or other reasons, and provision has been made for dispensing with the "analogy rule" in such cases. As this exception is generally formulated, an admiralty plaintiff may escape the local statute if he shows both that his delay was excusable and that the defendant was not prejudiced by it. Moreover, the most recent cases emphasize the latter consideration and hold that a relatively weak excuse will suffice if the defendant is unhurt by the delay. See Molnar v. Gulfcoast Transit Co., 371 F.2d 639, 642 (5th Cir. 1967); Vega v. The Malula, 291 F.2d 415, 418 (5th Cir. 1961); cf. McMahon v. Pan-American World Airways, Inc., 297 F.2d 268 (5th Cir. 1962) (dismissal because plaintiff failed to amend his complaint to show excuse and/or lack of prejudice, despite having been granted leave to do so).

■■■■■■■ Hark's claim should be permissible under these tests. He probably has an excuse for delay in that aviation accidents are investigated by the government, a practice of which I will take judicial notice, and he may have wished to await the outcome of this inquiry. In addition, a thin but sufficient excuse may be found in his belief—incorrect but not unjustifiably so—that he could maintain the alternative action in maritime contract where the analogous statute would be longer. Likewise, Antilles does not appear to have been prejudiced by the lapse of time. Prejudice is presumed from a mere delay beyond the analogous statute, see Morales and McGrath supra, but the presumption may be rebutted. I believe it is sufficiently rebutted on the face of the present record. The present action was filed only a few months after the expiration of the two-year period provided by the local statute of limitations. Moreover, to demonstrate prejudice, Antilles has submitted an affidavit of its president to the effect that the pilot left the airline's employ in April of 1970 and could not be located thereafter. But this prejudice cannot be attributed to Hark's delay, since the pilot's leaving and disappearance was less than two months after the crash and well within the statutory period. Most conclusively, the nature of the action indicates that Antilles has not been prejudiced. An airplane crash is not an inconspicuous tort, which can linger unnoticed for many years and then be sued upon after the witnesses have departed or their memories faded. Antilles was immediately aware of the crash, would realize that it would be a likely source of litigation, and had immediate access to both witnesses and the downed plane itself. Compare Molnar v. Gulfcoast Transit Co., 371 F.2d 639 (5th Cir. 1967). Since Antilles was placed on immediate notice of its legal danger, and no doubt preserved the appropriate records with this in mind, I find it is not prejudiced by the slight delay involved here.

It remains to be examined whether this resolution is consistent with the law of this jurisdiction. The Third Circuit has recognized that the analogy rule may be abandoned when the two tests of excuse and lack of prejudice are satisfied, and this alone should be sufficient for the present case. See Wounick v. Pittsburgh Consolidation Coal Co., 283 F.2d 325 (3rd Cir. 1960). On the other hand, however, it may be thought that Hark's excuse for delay is notably thin. In that event, I must determine whether the Circuit has adopted the further rule, that lack of prejudice will be the factor given relatively greater weight. I have found no case so holding, but the two most recent decisions I have located are consistent with such a rule. In each case the plaintiff's delay appeared to be affirmatively culpable, so that no lack of prejudice to the defendant would have permitted the action and it was therefore unnecessary for the Circuit to determine the acceptability of a thin but genuine excuse when combined with a lack of prejudice. See Burke v. Gateway Clipper, Inc., 441 F.2d 946 (3rd Cir. 1971) (over ten years' delay) ; Mroz v. Dravo Corp., 429 F.2d 1156 (3rd Cir. 1970) (considerable evidence that the suit was brought upon a later-awakened desire for vengeance). Since this issue appears to be open, and since I think that the Fifth Circuit's emphasis is desirable on policy grounds, I will adopt that relative emphasis to the extent that disposition of this case requires.

An order will be entered sustaining the action in maritime tort and dismissing the counts in warranty and contract and, at this conclusion, I wish to acknowledge with thanks the very able and helpful legal presentation by the proctors, Brackley Shaw of Shaw, Pittman, Potts & Towbridge, Washington, D.C. and Thomas Alkon of Isherwood & Colianni, St. Croix, Virgin Islands.

## ORDER

For the reasons set forth above, it is hereby ordered as follows:

1. The motion for dismissal and/or for summary judgment is GRANTED with respect to the counts in contract and warranty.

2. The motion is DENIED with respect to the count alleging a maritime tort.

3. Each party shall bear his own costs.