723 So.2d 866 (1998)
FLYING BOAT, INC., d/b/a Chalks International Airlines, Appellant,
v.
Jennifer Lynn ALBERTO, as Personal Representative of the Estate of John Ward Alberto, deceased, and Dianna J. Turner, as Personal Representative of the Estate of Alan J. Turner, deceased, Appellees.
No. 97-4191.
District Court of Appeal of Florida, Fourth District.
December 2, 1998.
Rehearing Denied January 26, 1999.
Richard A. Sherman and Rosemary B. Wilder of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, and Richard A. Giardino of Ligman, Martin & Evans, P.L., Pompano Beach, for Appellant.
Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., and Karen E. Terry of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, for Appellee Jennifer Lynn Alberto.
Brian D. Hill of Hill & Ponton, P.A., Orlando, and James H. Furman of Byrd, Davis & Eisenbery, LLP, Austin, Texas, for Appellee Dianna J. Turner.
PER CURIAM.
Appellant, Flying Boat, Inc., appeals an order on summary judgment in which the court ruled that provisions of the Florida Workers' Compensation Act must yield to conflicting provisions for recovery under federal maritime wrongful death common law. We affirm.
*867 John Alberto and Alan Turner, pilot and co-pilot of one of Appellant's seaplanes, died during takeoff when the nose of the seaplane they were operating pitched up and then crashed back down into the navigable waters of Key West Harbour, in an area of commercial shipping traffic. The pilots had just discharged passengers while the seaplane was afloat. Their survivors claimed workers' compensation benefits under section 440, Florida Statutes, and their estates filed separate actions alleging federal maritime wrongful death and negligence.[1] The plaintiffs alleged that the crash was caused by the failure of a marine bilge pump to clear the hull of water prior to takeoff. They also alleged wrongful acts or omissions of the mechanics relating to the installation, functioning, and maintenance of the bilge pump.
Appellant and other defendants filed a motion for summary judgment, arguing that Florida workers' compensation law provided an exclusive remedy to the plaintiffs and immunity to them from this wrongful death action. The trial court concluded that the Florida Workers' Compensation Act's limitations on recovery for wrongful death impermissibly conflict with federal maritime law acknowledging a substantive right to recovery for wrongful death.
Analysis of federal maritime jurisdiction[2] and its preemption over conflicting state law begins with Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In Executive Jet, a flock of seagulls flew into the jet engines of an airplane during takeoff in what was intended to be a flight mostly over land from Ohio to Maine and then to New York. The airplane crashed into Lake Erie and sank. The Supreme Court upheld lower court decisions that there was no federal admiralty jurisdiction over aviation tort claims arising from flights by land-based aircraft between points within the continental United States. Id. at 274, 93 S.Ct. 493.
In Executive Jet, the Supreme Court rejected the test previously used for determining admiralty jurisdiction and announced as predicates for admiralty jurisdiction in aviation tort cases the following elements: (1) the alleged wrong occurs or is located in a maritime locality (navigable waters), and (2) the alleged wrong bears a significant relationship to traditional maritime activity.
Two federal court decisions from the Virgin Islands involving seaplanes have applied the standard of Executive Jet and concluded that federal maritime jurisdiction was properly invoked. In Hark v. Antilles Airboats, Inc., 355 F.Supp. 683 (D.C.V.I.1973), a seaplane incurred difficulties before completion of takeoff. The district court concluded that the resulting seaplane crash raised grounds for federal admiralty jurisdiction for three reasons: (1) problems with seaplane takeoffs and landings differ from those encountered with conventional aircraft, and instead related to the "marine" nature of runways used; (2) where flights are over international waters, there are special conveniences in using a federal admiralty forum;[3] and (3) it is desirable to treat ship and aircraft accidents in the same manner, insofar as it is possible. Id. at 686.
Addressing the first element of the unique aspects of seaplane takeoffs and landings, the court said:
Seaplane takeoffs and landings differ in important respects from those of conventional aircraft. It is therefore desirable to have a specialized body of law and procedures to draw upon, in the event that a mishap from this phase of the operations reaches the courts. Since many of the special considerations are maritime in nature, the admiralty division is the most *868 obvious place to locate this special expertise.... I hold that a seaplane flight retains a distinct "marine" character at least until the plane is safely airborne. By "airborne" I do not mean the plane has merely left the water, but rather that it has left the reach of the special maritime hazards discussed above. This would be when the plane has found its way out of the harbor basin, reached an altitude sufficient to maintain altitude and directional control in the event of a critical engine failure. I believe that before then the seaplane is still in the takeoff phase of its flight, which must be considered maritime.
Id. at 686-87.
In Hubschman v. Antilles Airboats, Inc., 440 F.Supp. 828 (D.C.V.I.1977), a seaplane intended for a flight almost entirely over international waters broke apart during a forced high seas landing and sank. That court found both elements of Executive Jet's test for admiralty jurisdiction to have been met. The alleged tort had a maritime locality and a significant relationship to traditional maritime activity. The court there added that the fact that any actionable negligence may have originated on land and the damage occurred on water did not remove admiralty jurisdiction.
Two Supreme Court decisions after Executive Jet urged by Appellant do not alter the applicability of the above decisions. In Foremost Insurance Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982), two pleasure boats collided on a Louisiana river. The Supreme Court said that the collision on navigable waters had a significant relationship with maritime commerce sufficient to satisfy that requirement for admiralty jurisdiction. The court also acknowledged the need for uniform rules governing navigation, the potential impact on maritime commerce when two vessels collide on navigable waters, and the uncertainty and confusion which would result if courts applied a jurisdictional test tied to the commercial use of a given boat. Id. at 677, 102 S.Ct. 2654. Foremost thus applied Executive Jet's standard beyond aviation torts, to incidents involving non-commercial vessels, as long as there is a potential hazard to maritime commerce which arises from activity which bears a substantial relationship to maritime activity.
In Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the owner of a pleasure yacht (again non-commercial) sued to limit his liability for fire damages to a moored yacht, marine, and several neighboring boats. That court said that the burning of docked boats at a marina on navigable waters was "likely to disrupt [maritime] commercial activity." Id. at 363, 110 S.Ct. 2892. Also, the court found a substantial relationship with traditional maritime activity in the storage and maintenance of the yacht, which was the activity from which the incident arose. Id. at 365-67, 110 S.Ct. 2892.
While Foremost and Sisson may be read to expand the Executive Jet standard to include consideration of whether the alleged wrong has a potentially disruptive impact on maritime commerce, there is no basis for concluding that this standard is not met in this case. Any wrongs in installation, maintenance, and use of a marine bilge pump on a commercial seaplane surely presents potentially disruptive impact on maritime commerce, and clearly arises from an activity having a substantial relationship to maritime activity.
Appellant argues that even if the seaplane crash in the case is deemed to be a maritime accident, the trial court erred in finding that federal maritime law preempted Florida's workers' compensation law and its entitlement to immunity from suit under that law. Analysis of this conflict of laws point involving federal maritime and state law properly begins with Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), in which the court held that state law must yield to federal maritime law if it "works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate regulations." Id. at 216, 37 S.Ct. 524. This pronouncement has come to be called the Jensen doctrine.
Appellant acknowledges this doctrine as well as the Fifth Circuit Court of Appeal's decision in Thibodaux v. Atlantic Richfield Co., 580 F.2d 841 (5th Cir.1978), in which the court held that a common law cause of action *869 under federal maritime law was not barred by the exclusive remedy provisions in a state workers' compensation statute. See also King v. Universal Elec. Constr., 799 F.2d 1073 (5th Cir.1986); Roberts v. City of Plantation, 558 F.2d 750 (5th Cir.1977); cf. Brockington v. Certified Elec., Inc., 903 F.2d 1523 (11th Cir.1990).[4]
We reject Appellant's argument that Florida's workers' compensation law does not conflict with the uniform nature of federal maritime law since the Florida statute is being asserted for immunity and thus as an absolute bar to liability from federal maritime liability. The trial court found that the Florida Workers' Compensation Act's limited allowance for recovery in the case of wrongful death is so disparate from the remedies available in federal maritime common law wrongful death law that there was conflict. The trial court properly noted that state law remedies for wrongful death admiralty cases have been allowed only where their remedial scheme is more generous than federal law. Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). That has not been shown to be the case here. Our review of the Florida Workers' Compensation Act's limitations on compensation for death found in section 440.16, Florida Statutes, supports the trial court's conclusion that Florida workers' compensation remedies are not more generous than federal maritime common law wrongful death law.
Therefore, the trial court order on summary judgment is affirmed.
STONE, C.J., DELL and FARMER, JJ., concur.
NOTES
[1] In Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Supreme Court held that federal maritime law afforded a remedy for wrongful death which occurs in state territorial waters.
[2] Admiralty or maritime jurisdiction is not defined by statute. 28 U.S.C. § 1333(1) simply provides that district courts have jurisdiction over any civil case of admiralty or maritime jurisdiction.
[3] Hark did extend Executive Jet to the extent that the district court held that it did not limit admiralty jurisdiction to flights over international waters, at least where such flights are made by seaplanes or amphibian airplanes between territorial islands. Id. at 687, 102 S.Ct. 2654.
[4] This court held that a barge worker injured on a vessel was a "seaman" within the meaning of federal maritime law and was not limited to recovery of state workers' compensation law in Potashnick-Badgett Dredging, Inc. v. Whitfield, 269 So.2d 36 (Fla. 4th DCA 1972). That case addressed a "doctrine of local concern" which is no longer Florida law, and turned on its connection to interstate commerce to remove it from that doctrine. Its application here is doubtful.