# IN THE SUPREME COURT OF CALIFORNIA

BRIAN RANGER,

Plaintiff and Appellant,

v.

ALAMITOS BAY YACHT CLUB,

Defendant and Respondent.

S282264

Second Appellate District, Division Eight

B315302

Los Angeles County Superior Court

19STCV22806

February 27, 2025

Justice Evans authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Jenkins concurred.

RANGER v. ALAMITOS BAY YACHT CLUB

S282264


Opinion of the Court by Evans, J.


In general, those who are injured while on board a vessel in navigable waters because of the negligence of their employer or the vessel owner may have a cause of action under a federal statute, judge-made general maritime law, or both. (See 1 Schoenbaum, Admiralty and Federalism (6th ed. Nov. 2023 update) §§ 4:1, 5:4.) In this case, plaintiff Brian Ranger (Ranger) seeks damages under general maritime law for injuries he alleges were caused by the negligence of his vessel-owning employer, defendant Alamitos Bay Yacht Club (the Club). The Club argues that Ranger is barred from asserting these federal common law claims because he does not qualify as a statutory "employee" within the meaning of the Longshore and Harbor Workers' Compensation Act (LHWCA; 33 U.S.C. § 901 et seq.). The LHWCA, as amended in 1984, excludes from the federal workers' compensation scheme individuals who (like Ranger) are employed by "a club" and "are subject to coverage under a State workers' compensation law." (33 U.S.C. § 902(3)(B).) The Court of Appeal agreed with the Club and affirmed the order sustaining the Club's demurrer to Ranger's complaint without leave to amend.

We conclude the Court of Appeal erred. The 1984 amendments to the LHWCA specify *which* workers' compensation scheme — federal or state — applies, but they did not themselves purport to abrogate available general maritime remedies for those outside the LHWCA's scope. Nor, under the

1

supremacy clause of the federal Constitution, may the exclusive-remedy provision in California's workers' compensation scheme be applied to deprive a plaintiff of a substantive federal maritime right. Whether Ranger's general maritime claims might be barred under *other* provisions of the LHWCA — and whether Ranger's claims properly invoked admiralty jurisdiction in the first place — are issues the Court of Appeal has not yet addressed. We therefore reverse the judgment of the Court of Appeal and remand for further proceedings.

## I. BACKGROUND

Ranger was a maintenance worker for the Club. As part of his duties, he painted, cleaned, maintained, and repaired the Club's fleet of vessels. He also was tasked with hoisting the Club's vessels in and out of navigable waters and mooring them. On August 28, 2018, Ranger was assigned to lower a vessel into navigable waters using "a hoist, boom and hook, and thereafter to moor the vessel in navigable waters." Once the vessel had been lowered into the water, Ranger boarded to unlock the vessel from the boom and moor it to the dock. Ranger alleges that he was required to board "directly onto an uneven, slippery and sloped surface at the bow of the vessel without adequate means of maintaining balance and stability," causing him to slip and fall, "proximately causing him to sustain serious injuries and damages." Ranger applied for state workers' compensation and then sued the Club in superior court. (*Ranger v. Alamitos Bay Yacht Club* (2023) 95 Cal.App.5th 240, 242 (*Ranger*).)

Ranger's second amended complaint asserted two claims under general maritime law, which is "a species of judge-made federal common law." (*Yamaha Motor Corp. v. Calhoun* (1996) 516 U.S. 199, 206.) The first cause of action asserted that the

Club negligently failed to provide Ranger with adequate training, policies and procedures for safe docking and boarding, and safe access to the vessel. The second cause of action asserted that the Club caused the vessel to be "unseaworthy, dangerous, unsafe and hazardous to employees . . . who were required to board said vessel." The trial court sustained the Club's demurrer without leave to amend on the ground Ranger had failed to allege facts to implicate federal admiralty jurisdiction. Although the court found (and the parties agreed) that Ranger had adequately alleged the tort occurred on navigable waters, the court concluded he had failed to demonstrate his fall posed "more than a fanciful risk to maritime commerce."

The Court of Appeal affirmed, but on different grounds. It declined to consider whether admiralty jurisdiction was implicated because it held instead that the LHWCA displaced general maritime law and made California's workers' compensation scheme Ranger's exclusive remedy. (*Ranger*, *supra*, 95 Cal.App.5th at pp. 242–243.) In so holding, the Court of Appeal created a split in authority with *Freeze v. Lost Isle Partners* (2002) 96 Cal.App.4th 45 (*Freeze*). (*Ranger*, at p. 246.)

We granted review to resolve the conflict.

## II. DISCUSSION

In reviewing an order sustaining a demurrer, we accept as true all the material allegations of the complaint. (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1049, fn. 2 (*King*).) Further, because the Court of Appeal never considered whether Ranger's accident came within maritime jurisdiction — but the federal maritime claims here presuppose the existence of such jurisdiction — we will assume, for purposes of this proceeding,

that federal admiralty jurisdiction is implicated. That means we will assume Ranger's tort claims satisfy conditions "both of location and of connection with maritime activity." (*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock, Inc.* (1995) 513 U.S. 527, 534 (*Grubart*).)

Even though federal courts' jurisdiction over admiralty and maritime is said to be "exclusive," state courts are nonetheless " 'competent' to adjudicate maritime causes of action in proceedings '*in personam*,' that is, where the defendant is a person, not a ship or some other instrument of navigation." (*Madruga v. Superior Court of California* (1954) 346 U.S. 556, 560–561; accord, *Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 509 ["maritime law rights of action may be enforced in either state or federal courts"]; see generally 28 U.S.C. § 1333 ["The district courts shall have original jurisdiction, exclusive of the courts of the States, of:  [¶]  (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled"].) State courts in such circumstances are "constrained by a so-called 'reverse-*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards." (*Offshore Logistics v. Tallentine* (1986) 477 U.S. 207, 223.)

Consequently, one key question in this case is what federal maritime law provides. The Court of Appeal held that as a result of the 1984 amendments to the LHWCA, Ranger had no federal maritime claim of any sort. In its view, Congress made state workers' compensation law "paramount" (*Ranger*, *supra*, 95 Cal.App.5th at p. 243) when it decided to exclude club workers like Ranger from the act's scope where, as here, they "are subject to coverage under a State workers' compensation

law" (33 U.S.C. § 902(3)(B)). Applying California's workers' compensation law — including its exclusive-remedy provision (Lab Code, § 3602, subd. (a)) — the Court of Appeal concluded the federal maritime claims were properly dismissed. (*Ranger*, at p. 250.) Ranger responds that the Court of Appeal accorded undue significance to the LHWCA in analyzing his common law claims. In his view, the exclusion of club workers from the act's coverage meant only that the state, rather than the federal, workers' compensation system applies, but did not otherwise deprive such workers of their federal right to pursue available tort remedies under general maritime law.

We agree with Ranger.

## A. The Longshore and Harbor Workers' Compensation Act

The LHWCA provides employees in traditional maritime occupations — excluding seamen, who are covered by the Jones Act (46 U.S.C. Appen. § 688 et seq.) — with no-fault federal workers' compensation remedies for injuries suffered while working on the navigable waters of the United States or in adjoining areas. (*Norfolk Shipbuilding & Drydock Corp. v. Garris* (2001) 532 U.S. 811, 818 (*Garris*).) In 1984, Congress amended the LHWCA to exclude club workers, among others, from the federal workers' compensation scheme, provided that the workers "are subject to coverage under a State workers' compensation law." (33 U.S.C. § 902(3)(C); see Sen.Rep. No. 98-81, 1st Sess., p. 2 (1983) (Sen.Rep. No. 98-81).) Consequently, the text of the LHWCA specifies which workers' compensation scheme — the federal LHWCA or state compensation laws — should apply to club workers like Ranger.

The 1984 amendments to the LHWCA, however, did not explicitly state whether workers excluded from its scope could pursue otherwise available *common law* maritime remedies. Ranger asserts causes of action for negligence and unseaworthiness, which are "settled" remedies under general maritime law. (*Garris, supra*, 532 U.S. at p. 813.) Assuming for purposes of this proceeding that Ranger would otherwise be entitled to assert these maritime claims, the narrow inquiry before us is whether those claims are barred by the 1984 amendments to the LHWCA. To resolve *that* question, we apply the "longstanding" canon that "[i]n order to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." (*United States v. Texas* (1993) 507 U.S. 529, 534; see *Exxon Shipping Co. v. Baker* (2008) 554 U.S. 471, 489 (*Baker*).)

The Club nowhere claims the LHWCA speaks directly to the availability of general maritime remedies for workers excluded by the act, and it would be difficult to make such an argument. The LHWCA by its terms does not narrow admiralty jurisdiction for noncovered employees (see *Director, OWCP v. Perini North River Associates* (1983) 459 U.S. 297, 320, fn. 29 (*Perini*)), nor does it purport to articulate what general maritime remedies are or are not available to club workers. The Club assumes, mistakenly, that "judge-made general maritime law tort causes of action against the worker's employer . . . are recognized exclusively as being for the benefit of maritime workers." In reality, common law maritime remedies "may be invoked by virtually anyone who suffers injury or loss in an admiralty setting." (1 Schoenbaum, Admiralty and Maritime Law, *supra*, § 5:4; see generally *Grubart, supra*, 513 U.S. at p. 543 ["Although we agree with petitioners that these cases do

not say that every tort involving a vessel on navigable waters falls within the scope of admiralty jurisdiction no matter what, they do show that ordinarily that will be so"].) Had the LHWCA intended to abrogate general maritime remedies for *every worker* who was not an employee as defined in the act, one would expect to see that intent expressed more clearly.

The Club draws our attention to certain characterizations about excluded workers that appear in the Senate report concerning the bill that initiated the 1984 amendments. The report explained that although these workers "by circumstance happened to work on or adjacent to navigable waters," they "lack a sufficient nexus to maritime navigation and commerce" and "are more aptly covered under appropriate state compensation laws." (Sen.Rep. No. 98-81, *supra,* at p. 25.) The Club infers from these passages that Congress must have likewise deemed the excluded workers too attenuated from a connection to maritime activity to justify maritime jurisdiction. We disagree. At the time of the 1984 amendments, the high court had already made clear that although the term "maritime" appears in both the LHWCA and in the codification of federal court admiralty jurisdiction, they do not carry identical meanings: "these are two different statutes 'each with different legislative histories and jurisprudential interpretations over the course of decades.' " (*Perini, supra,* 459 U.S. at p. 320, fn. 29.) Accordingly, the exclusion of club workers from the ambit of the LHWCA did not clearly signal these workers fell outside the broad parameters of admiralty jurisdiction and the reverse-*Erie* doctrine.

The available legislative materials further undermine any supposed intent to abrogate common law remedies for workers excluded from the LHWCA. Rather, the Senate committee that originated the 1984 amendments articulated its goal in more

modest terms.  According to the Senate report, Congress did not
"attempt[] an overall evaluation or rationalization" of the
general maritime law "because the existing body of statutory
and decisional law does not admit to easy synthesis."  (Sen.Rep.
No. 98-81, *supra*, p. 25.)  The report then offered the "obvious"
observation that the 1984 amendments made only "limited
changes" to the LHWCA, leaving "undisturbed" the "large body
of decisional law relative to traditional maritime employers and
harbor workers."  (Sen.Rep. No. 98-81, *supra*, p. 26.)  We
therefore lack a "clear indication" (*Baker*, *supra*, 554 U.S. at
p. 489) that Congress intended to prevent club workers like
Ranger from asserting claims in admiralty under general
maritime tort principles.

The Club, like the Court of Appeal below, argues that
Ranger is nonetheless barred from asserting otherwise available
maritime remedies because the United States Supreme Court
has instructed admiralty courts exercising their inherent
common-law authority to " 'look primarily to these legislative
enactments for policy guidance.' "  (*Dutra Group v. Batterton*
(2019) 588 U.S. 358, 361 (*Batterton*).)  The Club emphasizes, in
particular, that the LHWCA in many respects restricts workers
within its scope from asserting general maritime claims.  (See
33 U.S.C. § 905.)  From this, it divines a general congressional
policy that excluded workers similarly should not be allowed to
prosecute maritime claims.  We conclude the Club's reliance on
*Batterton* is misplaced.

In *Batterton*, *supra*, 588 U.S. 358, the plaintiff seaman
suffered injuries and sued the defendant vessel owner under
various causes of action, including unseaworthiness.  The claim
sought both general and punitive damages.  (*Id*. at p. 368.)  In
disallowing the claim for punitive damages, the high court

highlighted two key points: (1) that punitive damages had not traditionally been awarded for claims of unseaworthiness (*id.* at pp. 370–372), and (2) that punitive damages are not recoverable under the Jones Act (*id.* at pp. 372–374), which is "so similar" to and has "significant overlap" with unseaworthiness (*id.* at p. 367). Although it deemed these arguments "practically dispositive" (*id.* at p. 371), the high court went on to address the plaintiff's attempt to justify punitive damages "on policy grounds." (*Id.* at p. 374.) The court stated: "it would exceed our current role to introduce novel remedies contradictory to those Congress has provided in similar areas" and was "particularly loath to impose more expansive liabilities on a claim [like unseaworthiness] governed by strict liability than Congress has imposed for comparable claims based in negligence." (*Ibid.*)

We are not persuaded that general maritime causes of action can be analogized to punitive damages. As stated above, negligence and unseaworthiness are far from "novel remedies" (*Batterton, supra,* 588 U.S. at p. 374) or "new entitlement[s]" (*id.* at p. 377). Negligence, for example, has traditionally been available to anyone who falls within admiralty jurisdiction. (*Kermarec v. Compagnie Generale Transatlantique* (1959) 358 U.S. 625, 630.) The Club fails to explain how allowing Ranger to assert general maritime causes of action would require the court "to sanction a new remedy." (*Batterton,* at p. 372.)

Nor would allowing club workers who are covered by state workers' compensation laws to prosecute general maritime claims flout "the policy expressed in congressional enactments." (*Batterton, supra,* 558 U.S. at p. 374.) Workers who are covered by the LHWCA give up their right to pursue certain maritime remedies. (See 33 U.S.C. § 905.) In exchange, though, covered workers receive "generous" compensation under the LHWCA.

(*Service Eng'g Co. v. Emery* (9th Cir. 1996) 100 F.3d 659, 661.) In particular, the LHWCA provides benefits that "generally are far greater than the corresponding benefits under state law"; for example, benefits under the LHWCA "are nearly three times larger than the corresponding maximum California benefits." (*Service Eng'g Co.*, at p. 661.) The Club does not explain why workers who are excluded from the LHWCA — and who did not receive the benefit of the bargain Congress struck with covered workers — must nonetheless suffer the limitations that are a part of that federal scheme. It would not "create bizarre disparities in the law" (*Batterton*, at p. 376) to hold that club workers are excluded from the bitter as well as the sweet of the LHWCA. Moreover, workers whose injuries lack sufficient "connection with maritime activity" as to fall outside admiralty jurisdiction altogether will still be unable to assert maritime claims. (*Grubart, supra*, 513 U.S. at p. 534.)

The Club finds it significant that workers are excluded from the LHWCA only if they are eligible for state workers' compensation. But the act's reference to state workers' compensation laws does not compel the conclusion that Congress intended for the state remedy to be *exclusive*. Because state compensation laws can vary (see 1 Schoenbaum, Admiralty and Maritime Law, *supra*, § 7:5), the mere availability of no-fault compensation under a state workers' compensation scheme does not inevitably connote an exclusive remedy. (See, e.g., *Amesquita v. Gilster-Mary Lee Corp.* (Mo.Ct.App. 2013) 408 S.W.3d 293, 302 ["it is not absurd or unprecedented for the legislature to have provided injured workers with a non-exclusive workers' compensation remedy"].) Indeed, the Club does not point to anything in the text of the LHWCA or in the Senate report to indicate Congress intended

that state workers' compensation awards be exclusive. Accordingly, the Club has failed to show it would be contrary to "the policy preferences" expressed by Congress (*Batterton, supra*, 588 U.S. at p. 370, fn. 6) to allow club workers who are injured under admiralty jurisdiction, but excluded from the LHWCA, to pursue otherwise available general maritime remedies.

Finally, we note that subsequent to the 1984 amendments, the high court declared that injured maritime workers who do not qualify under the LHWCA's no-fault workers' compensation scheme or as seamen under the Jones Act "may still recover under an applicable state workers' compensation scheme or, *in admiralty, under general maritime tort principles.*" (*Chandris, Inc. v. Latsis* (1995) 515 U.S. 347, 356, italics added; cf. *Chan v. Society Expeditions, Inc.* (9th Cir. 1994) 39 F.3d 1398, 1403 ["Whether or not he is deemed to be an employee for some purposes, he still has a general claim in admiralty for negligence, and adjudication of that claim is governed by federal common law" (fn. omitted)].) In this case, the ordinary default rule governs: "Absent a relevant statute, the general maritime law, as developed by the judiciary, applies." (*East River S.S. Corp. v. Transamerica Delaval* (1986) 476 U.S. 858, 864.)

For all these reasons, we conclude that the 1984 amendments to the LHWCA did not bar Ranger from asserting otherwise available maritime claims.

## B. The California Workers' Compensation Act

To the extent the Court of Appeal's opinion suggests that California's workers' compensation scheme in itself displaces general maritime remedies and constitutes Ranger's exclusive remedy, we disagree. It is true that California's workers'

compensation system provides "a comprehensive statutory scheme governing compensation given to California employees for injuries incurred in the course and scope of their employment." (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 810.) Under Labor Code section 3602, the workers' compensation remedy "provides an injured employee's 'exclusive' remedy against an employer for compensable work-related injuries." (*King, supra*, 5 Cal.5th at p. 1046.) We conclude, though, that the exclusive-remedy provision does not displace federal law in this case.

"As a general rule, the substantive law to be applied in maritime actions is the general maritime law." (*Societa Per Azioni De Navigazione Italia v. City of Los Angeles* (1982) 31 Cal.3d 446, 455, fn. 10 (*City of Los Angeles*).) "[A] state court may ' "adopt such remedies, and . . . attach to them such incidents, as it sees fit," so long as it does not attempt to make changes in the "substantive maritime law." ' " (*American Dredging Co. v. Miller* (1994) 510 U.S. 443, 447.) Consequently, state law may be applied "only where it does not conflict with an established federal maritime rule or does not otherwise interfere with a needed uniformity in the characteristic features of the federal maritime law." (*City of Los Angeles*, at p. 455, fn. 10; accord, *Pacific Merchant Shipping Assn. v. Goldstene* (9th Cir. 2011) 639 F.3d 1154, 1178 (*Goldstene*) [" 'states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not *actually conflict* with federal law or interfere with the uniform working of the maritime legal system' "].)

The exclusive-remedy provision in California's workers' compensation law would conflict with the established maritime claim for negligence, a tort that maritime law has recognized

"for more than a century." (*Garris*, *supra*, 532 U.S. at p. 820.) It likewise would conflict with the tort of unseaworthiness, which has long been "settled" under general maritime law (at least for seamen covered by the Jones Act). (*Garris*, at p. 813; see *Cooper Stevedoring of Louisiana, Inc. v. Washington* (5th Cir. 1977) 556 F.2d 268, 273 [tort of unseaworthiness is a "judicially created substantive right[]" in admiralty].) Assuming those causes of action are otherwise available to Ranger (see, *ante*, p. 2), we resolve the conflict here in favor of the federal maritime right. As the high court has made clear, "a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court." (*Pope & Talbot, Inc. v. Hawn* (1953) 346 U.S. 406, 410; accord, *Intagliata v. Shipowners & Merchants Towboat Co.* (1945) 26 Cal.2d 365, 371 ["the state courts must preserve all substantial admiralty rights of the litigants"]; *id.* at p. 373 ["state law cannot be applied in a maritime cause if it would substantially impair a right arising under federal maritime law"].) To hold, as the Court of Appeal did, that the state workers' compensation remedy supplanted Ranger's general maritime claims would violate this fundamental admiralty principle. (See *Stanton v. Bayliner Marine Corp.* (Wn. 1993) 866 P.2d 15, 28 (*Stanton*) ["federal maritime law preempts application of a conflicting state law where there is a judicially fashioned admiralty rule on point"].)

Following this logic, numerous federal courts have held that state workers' compensation exclusive-remedy provisions cannot preclude a worker's general maritime claims for relief. (See, e.g., *Green v. Vermilion Corp.* (5th Cir. 1998) 144 F.3d 332, 337, 341 [La. workers' compensation remedy did not preclude general maritime claims for slip-and-fall injury]; *Purnell v.*

13

*Norned Shipping B.V.* (3d Cir. 1986) 801 F.2d 152, 156 [recovery under Del. workers' compensation act did not preclude maritime remedy for wrongful death because, "under the supremacy clause, that claim cannot be preempted or impaired by state law"]; *King v. Universal Electric Construction Co.* (5th Cir. 1986) 799 F.2d 1073, 1074 ["when admiralty jurisdiction exists, 'an exclusive remedy provision in a state workman's compensation law cannot be applied when it will conflict with maritime policy and undermine substantive rights afforded by federal maritime law' "]; *Bagrowski v. American Export Isbrandtse Lines, Inc.* (7th Cir. 1971) 440 F.2d 502, 507–509 [exclusive remedy under Wis. workers' compensation act did not preclude action for indemnification against employer under maritime law]; *Morrow v. Marinemax, Inc.* (D.N.J. 2010) 731 F.Supp.2d 390, 398 (*Morrow*) [N.J. workers' compensation law did not preclude general maritime law claims; "When this Court sits in admiralty, it may not allow a state's statute to deny a plaintiff the opportunity to pursue a cause of action expressly provided for in the general maritime law"]; *Moore v. Capital Finishes, Inc.* (E.D.Va. 2010) 699 F.Supp.2d 772, 783 (*Moore*) [exclusivity provision in workers' compensation act would "be the quintessence of deprivation. Accordingly, this court cannot allow the Virginia Act to preclude plaintiff's federal maritime tort claim"]; *In re Holoholo Litigation* (D.Hawaii 1983) 557 F.Supp. 1024, 1026–1029 [Hawaii workers' compensation exclusivity provision did not preclude claims under general maritime law].)

As the Court of Appeal acknowledged, the First Appellate District, Division Three likewise held in *Freeze* that a worker's "general maritime claims against her employer are not barred by the exclusivity provision of California's Workers'

Compensation Act." (*Freeze*, *supra*, 96 Cal.App.4th at p. 52.) But *Freeze* is hardly an outlier. Our sister states have similarly held that exclusive-remedy provisions in state workers' compensation laws must yield to general maritime claims. (See, e.g., *Rosales v. Icicle Seafoods, Inc.* (Alaska 2013) 316 P.3d 580, 584 [exclusive remedy of Alaska workers' compensation act "does not deprive a maritime employee of his federal remedies"]; *Flying Boat, Inc. v. Alberto* (Fla.Dist.Ct.App. 1998) 723 So.2d 866, 867 ["Florida Workers' Compensation Act's limitations on recovery for wrongful death impermissibly conflict with federal maritime law"]; *Richard v. Apache Corp.* (La.Ct.App. 2013) 111 So.3d 1156, 1163 ["federal admiralty law overrides the exclusive remedy provision of the Louisiana Workers' Compensation Act"]; *Jones v. Tecnico Corp.* (2011) 83 Va.Cir. 336, 342–343 ["the exclusivity provision of the Virginia Act shall not operate to deprive the plaintiffs of their substantive rights recognized by federal general maritime law"]; *Maziar v. State Dept. of Corrections* (Wn. 2009) 216 P.3d 430, 435 [Wn. industrial insurance act "does not bar Maziar's federal maritime claims"].)

Scholarly commentary, too, supports the conclusion that general maritime law trumps state workers' compensation exclusivity provisions. (See Sturley et al., *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits* (Summer 2024) 48 Tul. Mar. L.J. 329, 336-337 ["Under the Supremacy Clause, the exclusive liability provisions in state workers' compensation laws cannot defeat a worker's cause of action under federal maritime law"]; see generally 1 Schoenbaum, Admiralty and Maritime Law, *supra*, §§ 4:5 ["judge-made general maritime law, when in conflict with state law, is supreme"], 7:4 ["an exclusive remedy provision in a state workers' compensation statute cannot

deprive a party of a cause of action afforded by federal maritime law"].)

The Court of Appeal below, which came to the opposite conclusion, relied on *Brockington v. Certified Electric, Inc.* (11th Cir. 1990) 903 F.2d 1523 (*Brockington*).  In *Brockington*, the plaintiff electrician was injured in a fall on a boat traveling between the Georgia coast and an island where a marine laboratory was being built.  After recovering medical and compensation benefits under the Georgia Workers' Compensation Act, he filed an action against his employer in federal court for negligence under general maritime law.  (*Id.* at pp. 1525–1526, 1531.)  The district court held that the claim of negligence was barred under the exclusive-remedy provisions of the Georgia act — although it suggested that a claim of unseaworthiness, in contrast, might have survived.  (*Id.* at pp. 1531, 1533.)  The Eleventh Circuit then adopted the district court's opinion as its own.  (*Id.* at pp. 1524–1525.)

*Brockington* never considered whether the exclusivity provision in the Georgia workers' compensation act would "deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretative decisions of this Court," including "their long-recognized right to recover in admiralty for negligence." (*Pope & Talbot, Inc. v. Hawn, supra,* 346 U.S. at pp. 410, 413.)  The court instead invoked Eleventh Circuit precedent and reasoned that "[i]n order to determine whether to give effect to a state law to the exclusion of a conflicting admiralty law, courts have generally used a balancing approach. . . .  [¶]  . . . . *'If there is an admiralty-state law conflict, the comparative interests must be considered —* they may be such that admiralty shall prevail . . . or if the policy underlying the admiralty rule is not strong and the effect on

admiralty is minimal, the state law may be given effect.' " (*Brockington, supra*, 903 F.2d at p. 1530, quoting *Steelmet, Inc. v. Caribe Towing Corp.* (11th Cir. 1986) 779 F.2d 1485, 1488.) The court concluded that "the state has a strong interest in application of its worker's compensation law with no comparable interest to tip the balance in favor of application of general maritime law." (*Brockington*, at p. 1533.)

We are not convinced that the direct conflict between state and federal law in this case can be resolved by a balancing of interests. Interest balancing is a characteristic of the choice-of-law inquiry. (See *Sosa v. Alvarez-Machain* (2004) 542 U.S. 692, 709; accord, *ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 838.) But "in our system of federalism, federal law and state law ordinarily coexist. When the two overlap, tensions between them are resolved not by interstate comity and choice of law principles but by the supremacy clause and preemption principles." (*Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 757.) Indeed, the Club expressly disclaims the need for a choice-of-law analysis in this case. And whatever role there may be for interest balancing under certain preemption principles (see, e.g., *Goldstene, supra*, 639 F.3d at p. 1178), the Club does not even purport to balance any interests here. We therefore do not find *Brockington*, or the few cases that rely on its approach, to be persuasive. (Accord, *Morrow, supra*, 731 F.Supp.2d at p. 398 [rejecting the Eleventh Circuit's balancing test and concluding "state law must yield," which is "most faithful to Supreme Court precedent"]; *Moore, supra*, 699 F.Supp.2d at p. 780 ["The applicable law, properly construed, does *not* provide for a balancing test in the traditional sense, under which the relative strength of either side's interests can potentially 'tip the balance in favor of [or against] application of

general maritime law' "]; cf. *Stanton*, *supra*, 866 P.2d at p. 26 ["the court need not engage in 'interest analysis' where there is a conflict between the state and federal remedies for economic loss; such conflicts are resolved in favor of federal maritime law"]; see generally Denton, *Lifting "The Great Shroud of the Sea": A Customary International Law Approach to the Domestic Application of Maritime Law* (Winter 2012) 37 Tul. Mar. L.J. 1, 30 ["the Supremacy Clause precludes a conflict-of-laws-style balancing of state and federal interests — if maritime law is federal law, then it is superior to state law"].)

### C. Other Issues

The Club advances a number of other arguments for sustaining its demurrer, among them that Ranger has failed to establish admiralty jurisdiction, which is the predicate for the application of general maritime law; that the tort of unseaworthiness has been abolished for workers, like Ranger, who are not seamen under the Jones Act; and that Ranger, as a repair worker, lacks the ability to assert a negligence claim against his vessel-owning employer because of the LHWCA. The Court of Appeal has not yet considered these questions, nor has any court had cause to consider whether amounts Ranger may receive under his workers' compensation claim should be credited against any future award he may obtain under maritime law.[1] We leave these matters for the Court of Appeal to address on remand in the first instance.

---

[1] The Club has not claimed the current litigation is barred by the doctrine of election of remedies.

### III. CONCLUSION

"The issue of federalism in admiralty and the scope of application of state law in maritime cases is one of the most perplexing issues in the law." (1 Schoenbaum, Admiralty and Maritime Law, *supra*, § 4:4.) After careful consideration of case law from our court and the United States Supreme Court, decisions from the intermediate federal appellate courts as well as the courts of our sister states, and the thoughtful contributions by commentators, we conclude that neither the 1984 amendments to the LHWCA nor the exclusive-remedy provision in the California Workers' Compensation Act bars a plaintiff under admiralty jurisdiction from seeking further relief for an injury under general maritime law. The judgment of the Court of Appeal is reversed, and the case is remanded for further proceedings consistent with this opinion.

**EVANS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Ranger v. Alamitos Bay Yacht Club

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 95 Cal.App.5th 240
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S282264
**Date Filed:**  February 27, 2025

---

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Mark C. Kim

---

**Counsel:**

Krissman & Silver, Jarod A. Krissman, Kathie Sierra; McGuinn, Hillsman & Palefsky and John R. Hillsman for Plaintiff and Appellant.

Law Offices of Charles D. Naylor and Charles D. Naylor for Susan J. Garner, Susan M. Geerlings and Melissa G. Tatman as Amici Curiae on behalf of Plaintiff and Appellant.

Cox, Wootton, Lerner, Griffin & Hansen, Neil S. Lerner and Mitchell S. Griffin for Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John R. Hillsman
McGuinn, Hillsman & Palefsky
220 Jackson Street, Suite 350
San Francisco, CA 94111
(415) 421-9292

Mitchell S. Griffin
Cox, Wootton, Lerner, Griffin & Hansen, LLP
900 Front Street, Suite 350
San Francisco, CA 94111
(415) 438-4600